## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **GLANDER INTERNATIONAL** | § | |
| **BUNKERING, INC.** | § | |
|     **Plaintiff** | § | |
| | § | |
| **V.** | § | **C.A. NO. 3:23-cv-00071** |
| | § | **Admiralty 9(h)** |
| **NUSTAR ENERGY SERVICES,** | § | |
|  **INC.** | § | |
|     **Defendant** | § | |

### DEFENDANT NUSTAR ENERGY SERVICES, INC.'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF

TO THE HONORABLE COURT:

Defendant NuStar Energy Services, Inc. ("NuStar") under Federal Rule of Civil Procedure 56 files this Motion for Partial Summary Judgment as to the claims of Plaintiff Glander International Bunkering, Inc. ("Glander").

### NATURE AND STAGE OF THE PROCEEDINGS

Docket call in this matter is set for September 13, 2024. Dispositive motions are due by May 24, 2024. Written discovery has been served by the Defendant.

133883763.3

1

# TABLE OF AUTHORITIES

**Cases**

*Bertucci Contr. Co., L.L.C. v. Steele (In re Bertucci Contr. Co., L.L.C.)*,
   712 F.3d 245, 246-47 (5th Cir. 2013). .....................................................................28

*BP Exploration & Prod. Inc. v. Cashman Equip. Corp.*
   132 F. Supp. 3d. 876 (S.D. Tex. 2015) ....................................................................10

*Catalyst Old River Hydroelectric Ltd. v. Ingram Barge Co.*,
   639 F.3d 207 (5th Cir. 2011) ..................................................................................27

*Cate v. Dover Corp.*,
   790 S.W.2d at 562.....................................................................................................16

*Cate v. Dover Corp.*
   790 S.W.3d 559 (Tex. 1990)....................................................................................16

*Chemtron Corp. v. Syngas Co.*,
   B14-90-00389-CV, 1991 Tex. App. LEXIS (Houston 14th 1991).........................21

*Emerson Elec. Co. v. Am. Permanent Ware Co.*,
   201 S.W.3d 301 (Tex. App.—Dallas 2006, no pet.).........................................10, 20

*Glob. Integrated Bldg. Sys. v. Target Logistics, LLC*,
   No. CIV A H-06-2637, 2009 WL 259360, at *10 (S.D. Tex. Feb. 3, 2009) ...........26

In, *Louisiana ex. rel. Guste v. M/V TESTBANK*,
   752 F.2d 1019, 1023 (5th Cir. 1985)(en banc) ......................................................27

Intrepid Ship Mgmt. v. Ocean Pioneer, 2015 U.S. Dist. 177244 *10-11 (S.D. Tex.
   2015). .......................................................................................................................28

*Jones v. Wells Fargo Bank, N.A.*,
   666 F.3d 955 (5th Cir. 2012) ..................................................................................20

*LaBella v. Charlie Thomas, Inc.*
   942 S.W.2d 127 (Tex. App.—Amarillo 1997, writ denied) ...................................16

*Mostek Corp. v. Chemtrol Corp.*,
   642 S.W.2d 20 (Tex. App. – Dallas 1982, writ dism'd by agr.)............................21

*Oldham v. Thompson/Ctr. Arms Co.*,
   H-12-2432, 2013 U.S. Dist. LEXIS 111709 (S.D. Tex. 2013)...............................15

*Reserve Mooring, Inc. v. Am. Comm'l Barge Line,*
  LLC, 251 F.3d 1069 (5th Cir. 2001) ....................................................................27

*Rmax, Inc v. Sarnafil, Inc.,*
  03-CV-1404-B, 2004 U.S. LEXIS 31953*18-19 ....................................................16

*Robins Dry Dock & Repair Co. v. Flint,*
  275 U.S. 303 (1927) ...............................................................................................27

*State of Veracruz v. BP, P.L.C. (In re Deepwater Horizon),*
  784 F.3d 1019 (5th Cir. 2015) ...............................................................................27

*Taira Lynn Marine Ltd. No. 5, LLC v. Jays Seafood, Inc.,*
  444 F.3d 371 (5th Cir. 2006) ...........................................................................26, 27

*W. R. Weaver Co. v. Burroughs Corp.,*
  580 S.W.2d 76 (Tex. App. – El Paso 1979, writ ref'd n.r.e.) ................................14

*Womco, Inc. v. Navistar Int'l Corp.,*
  84 S.W.3d 272 (Tex. App. – Tyler 2002, no pet.) ......................................12, 13, 15

**Statutes**

Tex. Bus. & Com. Code § 2.719(a)(2) .........................................................................20

Tex. Bus. & Comm. Code § 1.201(b)(10). ...................................................................13

Tex. Bus. & Comm. Code § 2.316 ..........................................................................12, 14

Uniform Commercial Code ...............................................................................9, 22, 25

U.C.C. 1.201(10) ..........................................................................................................16

U.C.C 1.303(b) .............................................................................................................16

U.C.C 1.303(d) .............................................................................................................16

U.C.C. 2.207 .........................................................................................................22, 23

U.C.C. 2.316 ..................................................................................................10, 16, 18

U.C.C. 2.715 ..........................................................................................................25, 26

U.C.C. § 2.719 ..............................................................................................19, 20, 21, 23

**Court Rules**

Federal Rule of Civil Procedure 9(h)................................................................................9

Federal Rules of Civil Procedure 8(c) .............................................................................9

## SUMMARY OF ARGUMENT

NuStar sold bunker fuel to Plaintiff Glander under a written contract. Glander sold that fuel to the vessel CLIPPER ENYO. Glander, in turn, filed suit alleging the fuel was contaminated and/or off specification. Glander alleges breach of contract, breach of warranties, intentional and/or negligent misrepresentation, as well as negligence. However, the terms and conditions in the Parties' contract specifically excludes all warranties, and limits Glander's sole remedy to the replacement of the bunker fuel or reimbursement of the purchase price less the proceeds of any salvage sale of that fuel. The Uniform Commercial Code (hereinafter "Uniform Commercial Code" or "U.C.C"), which is controlling law, allows the exclusion of these warranties and restriction of remedies. Further, Glander was not the owner of the vessel CLIPPER ENYO and the vessel suffered no physical damage. As such the economic loss rule does not allow recovery of purely economic claims absent a proprietary interest in property that suffers physical damage. NuStar files this partial summary judgment motion to enforce the terms and conditions in its written contract with Glander. Those terms and conditions set the ceiling for recovery by Glander. Additionally, Glander's failure to properly mitigate its damages should also reduce any recovery by Glander. Failure to mitigate will have to be proven in a later motion or at trial.

## FACTUAL BACKGROUND

Among NuStar's business endeavors, NuStar buys finished bunker fuel and sells that fuel to maritime vessels, and/or vessel owners, managers, operators and/or their agents.  Bunker fuel is an industry term for fuel that is burned in maritime vessels for propulsion.  On January 17, 2022, Erik Neunhoffer, a Trader in NuStar's Marine Fuels Sales Department received an inquiry from Glander for marine bunker fuel.[1]  Exhibit 1 to this Motion is the Unsworn Declaration of Mr. Neunhoffer and as attachments to that Declaration, the applicable email traffic and the NuStar Sales Agreement. Mr. Neunhoffer quoted prices to Mr. Emmanouil Gryllakis of Glander, the individual who sent the inquiry.[2] The prices were eventually accepted by Glander during a phone call between Mr. Neunhoffer and Mr. Gryllakis.[3]  The next day Glander sent its nomination, which did not contain any relevant contractual terms.[4] In response, Mr. Neunhoffer emailed the NuStar Confirmation and Sales Agreement to Mr. Gryllakis.  Attached as Attachment C is a true and correct copy of the email sent to Mr. Gryllakis/Glander.  Attachment D is the NuStar Sales Agreement, provided with the email at Attachment C.[5]  Glander did not object to any of NuStar's

---

[1] Attachment A to the Unsworn Declaration of  Erik Neunhoffer, attached as Exhibit 1 to this Motion.

[2] Attachment A to the Unsworn Declaration of Erik Neunhoffer.

[3] Exhibit 1, paragraph 4.

[4] Attachment B to Exhibit 1.

[5] Attachment D to Exhibit 1.

terms and conditions or provide any of its own additional or different contractual terms and conditions.[6]  The fuel was delivered to the vessel CLIPPER ENYO on January 27, 2022.  NuStar sent an invoice to Glander and Glander subsequently paid NuStar for the fuel.

Glander sued NuStar alleging the bunker fuel was contaminated and/or off specification, causing damage to the vessel CLIPPER ENYO.  Glander alleges breach of contract, breach of express warranties, and breach of implied warranties "…including but not limited to quality and/or fitness for a purpose and freedom from harmful defects…"[7] Alternatively Glander alleges intentional and/or negligent misrepresentation and  negligence.

## GROUNDS FOR PARTIAL SUMMARY JUDGMENT

1.      The contract between Plaintiff Glander and Defendant NuStar excludes all the warranties pled by Glander.  Glander's claims for the breach of these warranties should be dismissed with prejudice.  The contract also excludes any special, indirect, incidental and consequential damages. Glander's claims for those damages should be dismissed with prejudice.

2.      Glander's negligent misrepresentation and its negligence causes of action are barred by the economic loss rule.  Glander did not own the Vessel

---

[6] Exhibit 1, ¶ 6.
[7] Plaintiff's Original Complaint pg. 5, paragraph 19.

CLIPPER ENYO and that vessel suffered no physical damage as a result of the alleged bad fuel. The economic loss rule prevents Glander from recovering economic damages without physical damage to a proprietary interest. Glander's negligence cause of action should be dismissed with prejudice.

3.      If Glander can establish a breach of contract, its sole remedy, and the most it could recover under the NuStar-Glander contract, is reimbursement of the purchase price, minus the value received at a salvage sale. NuStar seeks an order from the Court limiting Glander's maximum recovery of damages to the purchase price minus the salvage sale of the fuel.

## ARGUMENT

### Sales Agreement

The Sales Agreement is the written contract between NuStar and Glander that governs the sale of the marine bunker fuel forming the basis of this lawsuit. Erik Neunhoffer's Unsworn Declaration (Exhibit 1) establishes that the Sales Agreement is the operative contract that governs the sale at issue between the Parties.[8]

The Sales Agreement conspicuously excludes the warranty of fitness for a Particular Purpose and all other warranties.[9] "ALL OTHER WARRANTIES, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY,

---

[8] Exhibit 1.
[9] Sales Agreement, Attachment D to Exhibit 1, p. 6, § 9.

FITNESS   FOR   A   PARTICULAR   PURPOSE,   WORKMANLIKE PERFORMANCE, OR OTHER WARRANTY OF QUALITY AND ANY OTHER CONDITIONS   AND   AGREEMENTS   WHATSOEVER   (WHETHER STATUTORY   OF   OTHERWISE)   ARE   EXPRESSLY   EXCLUDED   AND DISCLAIMED BY THE SELLER…"[10] Additionally, the Sales Agreement limits Glander's legal remedies to replacement of the fuel or its purchase price, minus any proceeds from a salvage sale of that fuel.[11]   This "sole and exclusive" remedy provided to Glander excludes all other remedies including claims for loss of use, detention and all other incidental or consequential damages including injury or damage to vessels, lost profit, delay or all other damages suffered by reason of the provision of marine fuel.[12]   In its Answer NuStar specifically pled the application of the contractual provisions regarding exclusion of warranties and sole and exclusive remedy as required by Federal Rules of Civil Procedure 8(c).

**<u>Applicability of the U.C.C. and Texas Business and Commerce Code</u>**

Glander designated its claims as admiralty and maritime claims under Federal Rule of Civil Procedure 9(h).  The Sales Agreement calls for the application of Texas law.[13]  Whether admiralty law or Texas law is applied the analysis will be the same

---

[10] Sales Agreement, § 9.
[11]   Sales Agreement, p. 6, § 9.
[12]   Sales Agreement, p. 6, § 9 and § 14.
[13] Section 20 of the Sales Agreement, Attachment D to Exhibit 1.

as both the general maritime law and Texas have adopted the Uniform Commercial

Code Article 2, which governs the sale of goods.[14]

## Exclusion of Warranties

The Sales Agreement excludes all implied warranties and limits the remedy for any

other express warranty.    With respect to the exclusion of implied warranties the

Uniform Commercial Code provides;

"unless the circumstances indicate otherwise, all implied warranties are excluded by

expressions like "as is", "with all faults' or other language which in common

understanding calls the buyer's attention to the exclusion of warranties and makes

plain that there is no implied warranty…"[15] The Sales Agreement provides ;

"ALL OTHER WARRANTIES INCLUDING ANY IMPLIED WARRANTIES OF
MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE,
WORKMANLIKE PERFORMANCE OR OTHER WARRANTY OF QUALITY
AND ANY CONDITIONS AND AGREEMENTS WHATSOEVER (WHETHER
STATUTORY OR OTHERWISE) ARE EXPRESSLY EXCLUDED AND
DISCLAIMED BY THE SELLER…"[16]

This provision in the Sales Agreement meets the U.C.C. requirements to call the

buyer's attention to the exclusion of implied warranties.

---

[14] General maritime law incorporates the U.C.C. *BP Exploration & Prod. Inc. v. Cashman Equip. Corp.*132 F. Supp. 3d. 876, 884 (S.D. Tex. 2015); "Contracts relating to the sale of goods are governed by article two of the UCC, adopted in Texas as chapter two of the business and commerce code." *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 310 (Tex. App.—Dallas 2006, no pet.).
[15] U.C.C. 2.316 (c)(1), this is subject to additional specific requirements to exclude the implied warranty of merchantability and fitness.
[16] Sales Agreement paragraph 9.

Glander has pled causes of action for breach of warranties of quality and/or fitness for purpose and "...freedom from harmful defects,..."  Although not clear from its Complaint, Glander may have also pled the breach of the warranty of merchantability.  These warranties are excluded under the Sales Agreement.  Section 9 of the Sales Agreement states in part:

9.     WARRANTIES

The BUYER is solely responsible for specifying to the SELLER the type, grade and quantity of Marine Fuel to be supplied under this Agreement. The SELLER warrants only that the Marine Fuel supplied shall conform to the specifications stated in the SELLER's signed confirmation document,.... ALL OTHER WARRANTIES, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, WORKMANLIKE PERFORMANCE, OR OTHER WARRANTY OF QUALITY AND ANY OTHER CONDITIONS AND AGREEMENT WHATSOEVER (WHETHER STATUTORY OR OTHERWISE) ARE EXPRESSLY  EXCLUDED AND DISCLAIMED BY THE SELLER AND THE SELLER'S AGENTS MAKE NO WARRANTIES WHICH EXTEND BEYOND THE   EXPLICIT   DESCRIPTION   CONTAINED   IN   THIS AGREEMENT.

Under Section 9, the Parties contractually agreed that the warranty of Fitness for a Particular Purpose and Merchantability were expressly excluded from the Sales Agreement.  Section 2.316 of the Texas Business and Commerce code and the Uniformed Commercial Code allows sellers to disclaim both the implied warranty

of Merchantability, as well as the implied warranty of Fitness for a Particular

Purpose.[17]

2.316 Exclusion or Modifications of Warranties.[18]

. . . . .

"(b)   Subject to Subsection (c), to exclude or modify the implied
warranty of merchantability or any part of it **the language must
mention merchantability** and in case of a **writing must be
conspicuous**, and to exclude or modify any implied warranty of fitness
the exclusion must be by a writing and conspicuous, . . . ." (emphasis
added)

## Merchantability

The provision in the Sales Agreement cited above, excluding the warranty of

Merchantability specifically uses the word "merchantability."

## Conspicuousness

Whether a particular disclaimer is conspicuous is a question of law to be

determined by the Court.[19]  "A term or clause is conspicuous if it is written so that

a reasonable person against whom it is to operate ought to have noticed it.  (Cite

omitted.)  Language is 'conspicuous' if it is in large type or other contrasting font

or color."[20]

---

[17] *Womco, Inc. v. Navistar Int'l Corp.*, 84 S.W.3d 272, 278 (Tex. App. – Tyler 2002,
no pet.) (citing Tex. Bus. & Comm. Code §2.316(b)).
[18] Tex. Bus. & Comm. Code § 2.316.
[19] *Womco, Inc. v. Navistar Int'l Corp.*, 84 S.W.3d at 279.
[20] *Id.*

The U.C.C./Tex. Bus. & Comm. Code defines the term conspicuous:

(10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:

> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font or color to the surrounding text of the same or lesser size; and

> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.[21]

The warranty provision in the Sales Agreement has a heading in all capital letters stating "WARRANTIES." The portion of Section 9 of the Sales Agreement regarding the exclusion of warranties is printed in all capital letters, contrasting with the standard upper and lower case letters used throughout the Sales Agreement. The title in all capital letters and the use of all capital letters in the body of the warranty exclusion is written so that a reasonable person against whom it is to operate ought to have noticed it. The exclusion of the warranties in the Sales Agreement is conspicuous.

Both requirements to exclude the warranty of merchantability have been satisfied; the word "Merchantability" is used, and the clause is conspicuous.

---

[21] Tex. Bus. & Comm. Code § 1.201(b)(10).

## Fitness for a Particular Purpose

To disclaim an implied warranty of fitness for a particular purpose, the disclaimer must be in writing and must be conspicuous.[22]

The contract provision at issue is in writing, "ALL OTHER WARRANTIES, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE . . . ARE EXPRESSLY EXCLUDED AND DISCLAIMED BY THE SELLER . . . ."  That same provision is conspicuous. As discussed in the Merchantability section, there is a heading in all capital letters, "WARRANTIES."  Further, in contrast to the majority of the Sales Agreement, this provision is printed in all capital letters.  Additionally, § 2.316(b) further provides, "Language to exclude all implied warranties of fitness is sufficient if it states, for example, that there are no warranties which extend beyond the description on the face hereof."[23]

The requirement to exclude the warranty of Fitness for a Particular Purpose, a conspicuous writing, has been satisfied.  Section 9 excludes all express and/or implied warranties, thus summary judgment should be grated as to Count II, Breach

---

[22] Tex. Bus. & Comm. Code § 2.316(b); *W. R. Weaver Co. v. Burroughs Corp.*, 580 S.W.2d 76, 81 (Tex. App. – El Paso 1979, writ ref'd n.r.e.).
[23] 2.316(b).

of Warranties in Glanders Original Complaint, and Glanders claims for breach of warranty should be dismissed with prejudice.

**Exclusion of Warranties Communicated to Glander**

". . . [I]n order for a disclaimer of an implied warranty to be valid, it must 'be communicated in the manner described in Section 2.316(b)(in a conspicuous writing) to the buyer before the contract of sale has been completed.'"[24]   On January 18, 2022, NuStar provided the Sales Agreement to Glander.[25]   The fuel was not delivered until January 27, 2022.[26]   Therefore the disclaimer of warranties was communicated to Glander in the manner described by section 2.316(b), in a conspicuous writing, before the contract of sale had been completed.

Because the conspicuous standard is an objective standard, a seller's disclaimer can be effective even without the buyer's actual knowledge of the disclaimer as long as it is conspicuous.[27]   "…the seller has the burden of proving the disclaimer was sufficient to meet the 'conspicuousness' requirement **or** that the

---

[24] *Oldham v. Thompson/Ctr. Arms Co.*, H-12-2432, 2013 U.S. Dist. LEXIS 111709 * 27-28 (S.D. Tex. 2013)(parenthetical added); *Womco, Inc. v. Navistar Int'l Corp.*, 84 S.W.3d at 280.

[25] Exhibit 1, Unsworn Declaration of Erik Neunhoffer.

[26] *Id at paragraph 7.*

[27] *Rmax, Inc v. Sarnafil, Inc.*, 03-CV-1404-B, 2004 U.S. LEXIS 31953*18-19 N.D. Tex.); *Cate v. Dover Corp.* 790 S.W.3d 559, 560 (Tex. 1990)("Comment 10 (Comment to U.C.C. 1.201(10) definition of conspicuous) however, clearly contemplated an objective standard, stating the test as 'whether attention can reasonably be expected to be called to it.'"(Parenthetical added).

buyer had actual knowledge of the disclaimer."[28]   Because the disclaimer of warranties meets the standards of conspicuousness, NuStar is not required to prove Glander had actual knowledge of the exclusion of warranties.

**Course of Dealing**

Under the U.C.C implied warranties can also be excluded by "course of dealing."[29] "A course of dealing is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.[30] That course of dealing may supplement or qualify the terms of an agreement.[31]  In the period of time between January 2, 2020, until the sale of bunker fuel for the CLIPPER ENYO, NuStar sold bunker fuel to Glander **83 times**. In each of those 83 sales the sale followed the same pattern as the sale regading the CLIPPER ENYO where NuStar's terms and conditions were provided to Glander.[32] The prior transactions establish that all warranties, including but not limited to

---

[28] *LaBella v. Charlie Thomas, Inc.* 942 S.W.2d 127, 132 (Tex. App.—Amarillo 1997, writ denied)(emphasis added).

[29] U.C.C 2.316(c)(3)("an implied warranty can also be excluded or modified by course of dealing. . . ."); *Cate v. Dover Corp.*, 790 S.W.2d at 562 (Similarly, Section 2.316(c)(3) allows an implied warranty to be excluded or modified by methods other than a conspicuous writing: course of dealing…").

[30] U.C.C 1.303(b).

[31] U.C.C 1.303(d).

[32] Unsworn Declaration of Erik Neunhoffer, Exhibit1, ¶ 8.

Merchantability and Fitness for a Particular Purpose are further excluded by the course of dealing between NuStar and Glander.

The Sales Agreement excludes all warranties including but not limited to the warranty of Merchantability and Fitness for a Particular Purpose. That written clause is conspicuous and uses the term Merchantability, thus meeting the U.C.C. requirements to exclude those warranties. The exclusion of warranties was communicated to Glander by a conspicuous writing, provided to Glander before the sale in question was complete. Further, the warranties in question are excluded through the course of dealing between the Parties, in the 83 sales to Glander in the two years before the sale at issue. thus summary judgment should be grated as to Count II, Breach of Warranties in Glanders Original Complaint, and Glander's claims for breach of warranties should be dismissed with prejudice.

## Limitation on Express Warranty

Glander has pled the breach of an express warranty:

"NuStar warranted that the bad bunker fuel would meet certain identifiable and industry standard specifications. However, NuStar provided to and loaded aboard the Vessel bad bunker fuel that was out of specification, unsuitable, unsafe, substandard, defective, and/or contaminated in breach of express warranties made and owed by NuStar to Plaintiff."[33]  While not admitting the existence of the

---

[33] Paragraph 18 of Plaintiff's Original Complaint

express warranty that would survive dismissal as previously briefed, NuStar has limited the remedy for any breach of an express warranty as provided for under the U.C.C.;

"Remedies for breach of warranty can be limited in accordance with the provisions of this chapter on liquidation or limitation of damages and on contractual modification of remedy. (section 2.718 and 2.719)."[34]

**Glander's Sole and Exclusive Remedy**

Under the Sales Agreement, Glander's sole and exclusive remedy is replacement of the bunker fuel or reimbursement of the purchase price of the bunker fuel minus any monies received in any salvage sale.

> THE BUYER'S SOLE AND EXCLUSIVE REMEDY SHALL BE LIMITED TO REPLACEMENT OF MARINE FUEL BY THE SELLER OR REIMBURSEMENT OF PURCHASE PRICE BY THE SELLER, LESS THE PROCEEDS OF ANY SALE OF THE MARINE FUEL WHICH THE BUYER MAY HAVE EFFECTED. . . THE BUYER'S SOLE REMEDY, AS SET FORTH ABOVE, IS TO THE EXCLUSION OF ALL OTHER REMEDIES. . . .[35]

Section 2.719 of the U.C.C. provides for limitations of remedies and damages.

(a)  Subject to the provisions of Subsections (b) and (c) of this section and of the preceding section on liquidation and limitation of damages,

(1)  the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as

---

[34] U.C.C. 2.316(d).
[35] Sales Agreement, Exhibit 1, Attachment D, p. 6, § 9.

by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(2) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

The Sales Agreement limits Glander's remedies to:

- Replacement of the bunker fuel **or**

- Reimbursement of the purchase price less the proceeds of any salvage sale of the bunker fuel.

> Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.[36]

## Contractual Remedy is Glander's sole remedy

The contractual remedy provided to Glander is the sole and exclusive remedy available to Glander to the exclusion of all other remedies. "[r]esort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy."[37] ". . . if the parties intend the term to describe the sole

---

[36] Comment 1 to 2.719; "the UCC official commentary is an authoritative interpretation of the Code." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 960, n. 5 (5th Cir. 2012).
[37] Tex. Bus. & Com. Code § 2.719(a)(2).

remedy under the contract, this must be clearly expressed."[38]  In addition to stating the Buyer's remedy is the sole and exclusive remedy, the Sales Agreement Section 9 continues;

> THE BUYER'S SOLE REMEDY, AS SET FORTH ABOVE, IS TO THE EXCLUSION OF ALL OTHER REMEDIES, INCLUDING, BUT NOT LIMITED TO, CLAIMS FOR LOSS OR USE, DETENTION AND ALL OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING INJURY OR DAMAGE (i) TO VESSELS WHICH THE BUYER REPRESENTS OR IS RESPONSIBLE FOR AS AGENT, (ii) TO CONTENTS AND EQUIPMENT OF SUCH VESSELS, (iii) TO CARGO OR TO PERSONS ABOARD SUCH VESSELS OR ADJACENT THERETO, (iv) LOSS OF PROFIT, DELAYS, OR (v) ALL OTHER DAMAGES OF LIKE OR DIFFERENT KIND SUFFERED BY REASON OF THE PROVISION OF MARINE FUEL OR MECHANICAL FAILURE CAUSED BY SAID MARINE FUEL, AND WHETHER OR NOT OCCASIONED BY THE SELLER'S NEGLIGENCE.

The Sales Agreement excludes all other remedies other than replacement of fuel or reimbursement of purchase price minus salvage sale.

**Limitation of Remedy is Not Unconscionable**

Section 2.719(c) provides:

> (c)  Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

---

[38] *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d at 313 (citing § 2.719(a)(2), cmt. 2).

". . . where there is no personal injury involved, Texas courts do not hesitate to enforce the limitation of remedy provisions authorized by 2.719."[39]  This matter is a commercial sale of goods that does not involve a personal injury.  As such the limitation on remedies should be enforced.

## Sole Remedy Communicated to Glander

As established, within the two years prior to the sale at issue, NuStar sold bunker fuel to Glander 83 times, each time providing its terms and conditions. Further, NuStar again provided Glander its Sales Agreement in this sale on January 18, 2022, with the fuel delivered on January 27, 2022.  The limitation of remedy provision was clearly communicated to Glander through the course of dealing between the Parties.  Additionally, an analysis under U.C.C. Section 2.207 provides additional support that the exclusive remedy became part of the Sales Agreement independent of the strong course of dealing between the Parties.

Section 2.207 addresses additional terms in acceptance or confirmation.

> (a)   A define and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

---

[39] *Chemtron Corp. v. Syngas Co.*, B14-90-00389-CV, 1991 Tex. App. LEXIS (Houston 14th 1991)(citing to), *Mostek Corp. v. Chemtrol Corp.*, 642 S.W.2d 20 (Tex. App. – Dallas 1982, writ dism'd by agr.)

(b)     The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:

> (1)     the offer expressly limits acceptance to the terms of the offer;

> (2)     they materially alter it; or

> (3)     notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

NuStar and Glander are Merchants as that term is defined under the Uniform Commercial Code.:

> (a)     "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

> . . . . .

> (c)     "Between merchants" means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants.

The limitation of exclusive remedy in the NuStar Sales Agreement became part of the contract because:

1.     The offer did not expressly limit acceptance to the terms of the offer;

2.     No objection was given by Glander;

3.     The limitation of exclusive remedy did not materially alter the Parties

agreement.  Comment 5 to the U.C.C. 2.207 states in part,

> "Examples of clauses which involve no element of unreasonable
> surprise and which therefore are to be incorporated in the
> contract unless notice of objection is seasonably given are: . . . a
> clause limiting the right of rejection for defects which fall within
> the customary trade tolerance for acceptance 'with adjustment'
> **or otherwise limiting remedy in a reasonable manner**."[40]

Upon proof of breach of the Sales Agreement, Glander's exclusive remedy is

replacement of the fuel, or reimbursement of the purchase price minus any monies

received in a salvage sale.


## Glander is Prohibited From Recovering Incidental and/or Consequential Damages

The damages Glander seeks are consequential damages, prohibited by the

Sales Agreement.  Section 9 of the Sales Agreement setting forth Glander's sole

remedy specifically excludes consequential damages, "THE BUYER'S SOLE

REMEDY, AS SET FORTH ABOVE, IS TO THE EXCLUSION OF ALL OTHER

REMEDIES, INCLUDING, BUT NOT LIMITED TO, CLAIMS FOR LOSS OF

USE, DETENTION AND ALL OTHER INCIDENTAL OR CONSEQUENTIAL

DAMAGES, INCLUDING…(iv) LOSS OF PROFIT, DELAYS, OR (v) ALL

---

[40] Citing to U.C.C. § 2.719 (emphasis added).

OTHER DAMAGES OF LIKE OR DIFFERENT KIND SUFFERED BY REASON OF THE PROVISION OF MARINE FUEL OR MECHANICAL FAILURE CAUSED BY SAID MARINE FUEL…. Section 14 of the Sales Agreement further provides, **"The Seller (NuStar) shall not be liable for special, indirect, consequential, punitive or exemplary damages of any kind arising out of or in connection with the performance or non-performance of this Agreement."**[41]

Glander has pled for the following incidental or consequential damages:

- Damage to the vessel, (since denied in response to request for admission numbers 1,2 and 3, see Exhibit 2).

- The cost to offload and replace the bad bunker fuel

- Survey costs

- Inspection fees

- Chemical analysis.

- Downtime

- Loss of Revenue

- Cleaning and disposal expenses

- Increased operational costs

- Administrative and overhead costs

- Expert fees

---

[41] Ex. 1, Attachment D, page 7, paragraph 14, (emphasis added).

- Pre and post judgment interest

- Costs of suit

- Attorney's fees.

Incidental damages under the U.C.C. are defined as "…expense reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover or any other reasonable expense incident to the delay or breach."[42]  Consequential damages are those that "…do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings…with third parties."[43]  "They can take many forms, and usually, but not always, involve losses from remote contracts with third parties that have been frustrated or compromised by the seller's breach.[44] Under the terms and conditions of the Sales Agreement Glander is prohibited from recovering any incidental or consequential damages.  Glander's claim for these damages should be dismissed with prejudice.

## Glander's Negligence Claims are Barred by the Economic Loss Rule

---

[42] U.C.C. 2.715(a)

[43] *Glob. Integrated Bldg. Sys. v. Target Logistics, LLC*, No. CIV A H-06-2637, 2009 WL 259360, at *10 (S.D. Tex. Feb. 3, 2009)

[44] Commentary to U.C.C. 2.715.

Glander's negligence claim and its negligent misrepresentation claim are further barred by the economic loss rule.  The general rule in admiralty is that persons who do not have a proprietary interest in property which is physically damaged have no cause of action for their economic losses that may result from unintentional torts. "It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury in a maritime negligence suit."[45] In Robins Dry Dock, the U.S. Supreme Court denied recovery to a time charterer for its loss of profits resulting from delays in completing repairs to the vessel as a result of a drydocking accident which damaged the ship's propeller.[46] This gave rise to the economic loss rule.  In, *Louisiana ex. rel. Guste v. M/V TESTBANK,* 752 F.2d 1019, 1023 (5th Cir. 1985)(en banc) concluded the economic loss rule prescribes that "physical damage to a proprietary interest [is] a prerequisite to recovery for economic loss in cases of unintentional maritime tort."[47]  "The rule's purpose is to limit the 'consequences of negligence and exclude indirect economic repercussions, which can be widespread and open ended."[48]   While other jurisdictions may have relaxed the bright line rule of *Robins Dry Dock* and

---

[45] *Taira Lynn Marine Ltd. No. 5, LLC v. Jays Seafood, Inc.*, 444 F.3d 371, 377 (5th Cir. 2006).

[46] *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 307-09 (1927).

[47] *TESTBANK,* 752 F.2d at 1020, see also *Taira Lynn,* 444 F.3d at 377.

[48] *State of Veracruz v. BP, P.L.C. (In re Deepwater Horizon)*, 784 F.3d 1019, 1024 (5th Cir. 2015) (quoting *Catalyst Old River Hydroelectric Ltd. v. Ingram Barge Co.,* 639 F.3d 207, 210 (5th Cir. 2011).

*TESTBANK*, the Fifth Circuit has not retreated from the physical injury requirement.[49] Thus, a plaintiff's lack of proprietary interest in the damaged property precludes tort recovery.[50] "Our en banc opinion in *Testbank* reviewed and reaffirmed the 'prevailing' maritime rule that 'denie[s] a plaintiff recovery for economic loss if that loss resulted from physical damage to property in which he had no proprietary interest (cite to *Robins Dry Dock* omitted) Since *Testbank,* this court has consistently applied the rule limiting recovery in maritime cases to plaintiffs who sustain physical damage to a proprietary interest."[51]

Here Plaintiff Glander has not alleged physical injury to any property which it owned.  Moreover, in response to written discovery, interrogatories and request for admission, Glander has admitted it had no proprietary interest in the vessel CLIPPER ENYO and further, admitted that the Vessel did not suffer any physical damage.[52] Glander's negligence claims are squarely barred by the economic loss rule and should be dismissed.

---

[49] *Taira Lynn,* 444 F.3d at 379, *Reserve Mooring, Inc. v. Am. Comm'l Barge Line,* LLC, 251 F.3d 1069, 1071-72 (5th Cir. 2001).

[50] *In re Deepwater Horizon,* 784 F.3d 1019, 1030-31 (5th Cir. 2015).

[51] *Bertucci Contr. Co., L.L.C. v. Steele (In re Berticci Contr. Co., L.L.C.),* 712 F.3d 245, 246-47 (5th Cir. 2013).

[52] see Plaintiff Glander's answers to discovery attached as Exhibit 2.

Lastly, Glander's claim for intentional misrepresentation, or fraud should likewise be dismissed based on its lack of a proprietary interest in any property that was damaged.[53]

**Glander's Potential Damages**

If Glander is able to establish its right to recover damages from NuStar they are limited as follows.

The invoice price for the sale of the bunker fuel is $439,687.43. [54]

The bunker fuel in question was sold at a salvage sale for $149,707.36. Under the Sales Agreement the most Glander could recover from is $289,980.07. This sum may be further reduced by Plaintiff's failure to properly mitigate its losses, which will be proven by separate motion or at trial.

## CONCLUSION AND PRAYER

NuStar and Glander are two sophisticated entities working in the bunker fuel market that have contractually agreed, bargaining at arm's length, on the allocation of risk in their transactions. The Sales Agreement effectively excludes the implied warranties pled for by Plaintiff. The contract also prohibits the recovery of consequential damages. The economic loss rule prevents Glander from recovering damages for its negligence claims. Additionally, the Sales Agreement limits Plaintiff

---

[53] *Intrepid Ship Mgmt. v. Ocean Pioneer*, 2015 U.S. Dist. 177244 *10-11 (S.D. Tex. 2015).
[54] Attachment E to Exhibit 1.

Glander's sole remedy to replacement of the fuel or reimbursement of the sales price minus any proceeds of a salvage sale.  NuStar respectfully requests this Court order that should Glander meet its burden of proof and prove NuStar's breach of contract, Glander's sole and exclusive remedy, and the most Glander can recover in this action shall be the reimbursement of the purchase price minus the proceeds of the salvage sale, $289,980.07.

 

 

Respectfully submitted,

*/s/ Walter J. Gallant*

WALTER J. GALLANT
Attorney-in-charge
State Bar No. 00784100
SDTX Bar No.15394
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: 832-460-4610
Facsimile: 713-759-6830
Walter.Gallant@lewisbrisbois.com
**ATTORNEYS FOR DEFENDANT
NUSTAR ENERGY SERVICES,
INC.**

OF COUNSEL:
LEWIS BRISBOIS BISGAARD & SMITH, LLP

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following counsel of record in accordance with the District's ECF service rules on this 2nd day of May 2024.


*/s/  Walter J. Gallant*
WALTER J. GALLANT