## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

| | | |
|---|---|---|
| **GLANDER INTERNATIONAL BUNKERING, INC.** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| **V.** | § | **C.A. NO. 3:23-cv-00071** |
| | § | **Admiralty 9(h)** |
| **NUSTAR ENERGY SERVICES, INC.** | § | |
| **Defendant** | § | |

### UNSWORN DECLARATION OF ERIK NEUNHOFFER IN SUPPORT OF NUSTAR ENERGY SERVICES, INC.'S PARTIAL MOTION FOR SUMMARY JUDGMENT

1.      My name is Erik Neunhoffer.  I am over the age of 21 and my business address is 19003 IH-10 West, San Antonio, Texas 78257.  I have personal knowledge of the facts stated in this Declaration, and, if called to do so, could testify competently to the facts stated herein under oath.

2.      I am employed by NuStar Services Company LLC, which provides services to NuStar Energy Services, Inc. (collectively, "NuStar").  I have been employed by NuStar since 2020 and served as NuStar's primary point of contact for bunkering since that time.  In 2020 my title was Associate Trader.  Since 2022, my title is Trader.  As part of the Marine Fuels Sales group with NuStar I sell marine bunker fuel on behalf of NuStar.

**EXHIBIT 1**

3.     I have been made aware of the litigation between Glander International Bunkering, Inc. ("Glander") and NuStar, presently pending in federal court in Galveston, Texas, as captioned above.  The subject of the litigation is the sale by NuStar and the purchase by Glander of bunker fuel in January of 2022.

4.     On Monday, January 17, 2022, I received an email from Mr. Emmanouil "Manos" Gryllakis with Glander requesting a quote from NuStar to supply the vessel CLIPPER ENYO in the Houston area with 850 metric tons of HSFO, High Sulphur Fuel Oil, to be delivered to that vessel between January 24 and January 30, 2022.  I provided a price for the fuel to Mr. Gryllakis.  Attached as Attachment A is a true and correct copy of that email exchange where Mr. Gryllakis requested a quote, and I provided a quote in response.  Eventually, Mr. Gryllakis agreed to NuStar's price on a phone call with me.

5.     At 9:22 am on January 18, 2022, Mr. Gryllakis emailed me Glander's Nomination for supplying the fuel to the vessel CLIPPER ENYO.  Attached as Attachment B is a true and correct copy of Glander's Nomination.  Glander provided no relevant contractual terms.

6.     At 9:43 am on that same day, I emailed Mr. Gryllakis the NuStar Confirmation and Sales Agreement.  Attached as Attachment C is a true and correct copy of the email I sent to Mr. Gryllakis/Glander.  Attached to that email was a copy of NuStar's Sales Agreement which contained the agreed essential terms of the sale and the

NuStar terms and conditions that governed the sale of the bunker fuel in question. Mr. Gryllakis with Glander did not object to the Sales Agreement or any of its terms and conditions.  Mr. Gryllakis, on behalf of Glander, did not send any terms and conditions on behalf of Glander, nor did Mr. Gryllakis or anyone else with Glander object to any of NuStar's terms and conditions in the Sales Agreement. Attachment D to this Declaration is a true and correct copy of the Sales Agreement I sent Mr. Gryllakis/Glander.

7.      The sale was completed.  The fuel was delivered to the vessel CLIPPER ENYO on January 27, 2022.  NuStar invoiced Glander and Glander paid NuStar for the fuel after delivery.  The NuStar invoice for this sale to Glander is Attachment E to this Declaration.

8.      I have reviewed the attached spreadsheet which lists NuStar's sales of bunker fuel to Glander  prior to the sale regarding the vessel CLIPPER ENYO, attached to this Declaration as Attachment F.   I have personal knowledge of how this information was gathered.  NuStar sold bunker fuel to Glander 83 times from January 2, 2020 until the sale for the CLIPPER ENYO.  I was personally involved in 58 of those sales.  All of those sales proceeded as did the sale involving the vessel CLIPPER ENYO.  In all of those sales NuStar provided its terms and conditions of sale to Glander.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 30th, 2024.
San Antonio, Texas, USA.

_____
Erik Neunhoffer

**Gallant, Walter**

| | |
|---|---|
| **From:** | Neunhoffer, Erik <Erik.Neunhoffer@nustarenergy.com> |
| **Sent:** | Monday, January 17, 2022 2:55 PM |
| **To:** | 'Emmanouil Gryllakis' |
| **Subject:** | RE: MV CLIPPER ENYO @ HOUSTON TERMINAL |

Confirmed, thank you.

Erik Neunhoffer
Associate Trader
W 210.918.2180
M 210.319.0239
ICE ENeunhoffer



**From:** Emmanouil Gryllakis <egr@gibunkering.com>
**Sent:** Monday, January 17, 2022 2:55 PM
**To:** Neunhoffer, Erik <Erik.Neunhoffer@nustarenergy.com>
**Subject:** [EXTERNAL] RE: MV CLIPPER ENYO @ HOUSTON TERMINAL

As discussed

we can proceed @503exw and documents to follow tomorrow. Basis 24th edd.

Best regards,

 **Manos Gryllakis**
**Bunker and Lubricant Trader**

M: +1 561 946 4003
T: +1 561 625 5500





**From:** Neunhoffer, Erik <Erik.Neunhoffer@nustarenergy.com>
**Sent:** Monday, January 17, 2022 3:02 PM
**To:** Emmanouil Gryllakis <egr@gibunkering.com>
**Subject:** RE: MV CLIPPER ENYO @ HOUSTON TERMINAL

505 mtw

1

**ATTACHMENT A
to Ex. 1**

Erik Neunhoffer
Associate Trader
W 210.918.2180
M 210.319.0239
ICE ENeunhoffer



**From:** Emmanouil Gryllakis <egr@gibunkering.com>
**Sent:** Monday, January 17, 2022 1:34 PM
**To:** Neunhoffer, Erik <Erik.Neunhoffer@nustarenergy.com>
**Subject:** [EXTERNAL] RE: MV CLIPPER ENYO @ HOUSTON TERMINAL

PLs let me have your COQ on HFO and your best number on this.

Best regards,


**Manos Gryllakis**
**Bunker and Lubricant Trader**

M: +1 561 946 4003
T: +1 561 625 5500





**From:** Neunhoffer, Erik <Erik.Neunhoffer@nustarenergy.com>
**Sent:** Monday, January 17, 2022 10:12 AM
**To:** Emmanouil Gryllakis <egr@gibunkering.com>
**Subject:** RE: MV CLIPPER ENYO @ HOUSTON TERMINAL

24th edd.

Erik Neunhoffer
Associate Trader
W 210.918.2180
M 210.319.0239
ICE ENeunhoffer



**From:** Emmanouil Gryllakis <egr@gibunkering.com>
**Sent:** Monday, January 17, 2022 9:07 AM
**Subject:** [EXTERNAL] MV CLIPPER ENYO @ HOUSTON TERMINAL

Good day

Pls offer for below

MV Clippper Enyo

Houston

ETA 20.01 – 01.02 – targa ETHYLENE terminal,

Delivery towards end of port stay – agent will coordinate.

Cory brother

850mt 3.50% HSFO

Best regards,



**Manos Gryllakis**
**Bunker and Lubricant Trader**

M: +1 561 946 4003
T: +1 561 625 5500







**Gallant, Walter**

| | |
|---|---|
| **From:** | egr@gibunkering.com |
| **Sent:** | Tuesday, January 18, 2022 9:22 AM |
| **To:** | DL-TXLPHQ-Bunkers |
| **Subject:** | [EXTERNAL] Nomination #FL35051, M/V CLIPPER ENYO, Houston- Texas, 24/01/22 - 30/01/22 |
| **Attachments:** | Nomination_CLIPPER ENYO.pdf |

Vessel          : CLIPPER ENYO

This message includes an attachment. Please let us know immediately if you have any problems with the attached file or do not agree to the content.

Best Regards
Glander International Bunkering Inc.

Ryan A. Hernandez
Direct line +1 561 625 5500
T:+1 561 625 5500 F:+1 561 619 8452 E:bunkers@gibunkering.com

1

**ATTACHMENT B
of Ex. 1**

From: agr@gibunkering.com
To: bunkers@nustarenergy.com
CC:
Sent: 2022-01-18 16:20:37.793 CET



# GLANDER
### INTERNATIONAL
# BUNKERING
EST. 1961

Ref.: RAH/EGR – Ref.no. FL35051 – Bunkers

Nustar Energy Services, Inc.

Att.:

## NOMINATION

We are pleased to confirm the following nomination:

| | |
|---|---|
| Vessel | : CLIPPER ENYO |
| Vessel's IMO No. | : 9827217 |
| Port | : Houston- Texas |
| Berth | : TAGRA TERMINAL |
| Date of delivery | : 24/01/22 – 30/01/22 |
| ETA | : 24/01/22 |
| ETD | : |
| For account of | : Glander International Bunkering Inc. |
| | |
| Quality | : FO 380 CST – max 3.50% |
| Quantity | : 850 Mts. |
| Price in USD | : 503 / MTS |
| | |
| Add. Cost | : Barging |
| Price in USD | : 9,515 / LUMPSUM |
| | |
| Add. Cost | : Surcharge |
| Price in USD | : 2,283.6 / LUMPSUM |
| | |
| Terms of payment | : 30 Days from date of delivery |
| | |
| Agent | : CORY BROTHERS USA |

(Tel/Fax) 713-904-5780 /
E-mail: agency.houston@corybrothers.com

The Seller warrants that the bunker to be supplied and/or the crude oil from which it
is produced is not originating from Iran.

Physical supplier to carry out a representative drip sampling into minimum 2 samples;
one for the vessel and one for the supplier. In presence of representatives from both
the supplier and vessel the sampling and the sealing has to be carried out and signed
for. The fuel oil must not contain chemical waste and/or used marine- or automotive
lubricants. The fuel oil must  be proven homogeneous.

IMPORTANT NOTICE

In order to secure our timely payment for this delivery it is a condition that we receive
the invoice including the signed and stamped bunker receipt not later than 14 days
before due date. Please send your invoice and BDN promptly to accounts.us@gibunkering.com

Supplier is to keep close contact with the agents.

Best regards


Glander International Bunkering Inc.
Ryan A. Hernandez
Direct line +1 561 625 5500

Glander International Bunkering, Inc.
2401 PGA Blvd, Suite 155, Palm Beach Gardens, Florida 33410, USA
Tel: + 1 561 625 5500, Fax: + 1 561 625 5525, Email: bunkers@gibunkering.com.

www.gibunkering.com

**Gallant, Walter**

| | |
|---|---|
| **From:** | Neunhoffer, Erik <Erik.Neunhoffer@nustarenergy.com> |
| **Sent:** | Tuesday, January 18, 2022 9:43 AM |
| **To:** | DL-TXLPHQ-Bunkers |
| **Subject:** | SALES CONFIRMATION CLIPPER ENYO |
| **Attachments:** | 0020169014.PDF |

Manos,


Please find our attached confirmation.

Thanks for your support.

NuStar Bunker Team


The information contained in this message is privileged

and confidential, and is intended only for the use of the

individual named above and others who have been specifically

authorized to receive it. If you are not the intended recipient,

you are hereby notified that any dissemination, distribution or

copying of this communication is strictly prohibited. If you have

received this communication in error, or if any problems occur

with transmission, please contact bunkers@nustarenergy.com.

Thank you.

ATTACHMENT C
of Ex. 1



**NuStar Energy Services Inc.**
**PO BOX 781609**
**San Antonio TX. 78248**

<u>SALES AGREEMENT</u>

| Organizational Data | Contract Terms |
|---|---|
| Deal Sheet No.: 20169014 | Payment Terms: WIRE 30 CAL DAYS FROM DELIVERY |
| Contract No.: 40231350 | Interest of 18% per annum will apply to late payments |
| Sold to: 109732 | Vessel: CLIPPER ENYO |
| GLANDER INTERNATIONAL BUNKERING INC. | ETA Date: 01/24/2022 00:00:00 to 02/01/2022 00:00:00 |
| 2401 PGA BLVD., SUITE 236 | Port: HOUSTON |
| Palm Beach Gardens, FL 33410 | Agent: CORY BROS |
| | Broker: |
| | Nomination Date: 01/17/2022 |

NuStar Energy Services Inc. ("Seller") agrees to sell and deliver, and GLANDER INTERNATIONAL BUNKERING INC. ("Buyer"), agrees to purchase, receive, and pay for the following product(s) in accordance with the terms and provisions of this Sales Agreement and the General Terms and Conditions incorporated herein by this reference. Buyer hereby represents and warrants that it is authorized by the Owners or Charterers of the Vessel to order the product(s) on the Vessel's behalf, and that all maritime lien rights against the Vessel for the provision of necessaries belong exclusively to Seller until such time as Buyer pays Seller for the full cost of the product(s). A copy of the General Terms and Conditions are being provided with this Sales Agreement and are also available on request.

**ITEM 000010**

| | | |
|---|---|---|
| Material | IFO380 | Intermediate Fuel Oil 380 |
| Quantity | 850.000 MT | |
| Rate | 503.000000 MT | |
| Item Note: | | |

**SECONDARY CHARGES**

| | | | | | |
|---|---|---|---|---|---|
| Harbor fees-IFO | 32.000000 | US$ | per | 1 EA | |
| Barging + surcharge | 10.910000 | US$ | per | 1 MT | |
| Barging + srchg(min) | 11,798.600000 | US$ | per | 1 EA | |

Quality:
All fuel oil supplied is in accordance with specifications set by ISO 8217: 2010(E) and conforms to regulations 14 and 18 of Annex VI of MARPOL 73/78 unless otherwise noted.
Samples:
MARPOL sample will be taken in accordance with supplier's commercial sampling procedures.
Notes:
By accepting the above described bunkers, the purchaser agrees that it may not set off against the purchase price of the bunkers any sums the purchaser contends are owed to it by NuStar Energy Services Inc. for any reason.
Sales And Use Tax Exemption: Fuel sold under this agreement will be used to operate vessels in interstate or foreign commerce. Any vessel not operated in interstate or foreign commerce will be responsible for any and all taxes associated with the delivered bunker fuel.

**ATTACHMENT D**
**of Ex. 1**

**NuStar Energy Services Inc.**
**PO BOX 781609**
**San Antonio TX. 78248**

NuStar

SALES AGREEMENT

The U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") has designated Petróleos de Venezuela S.A. ("PdVSA") as a Specially Designated National (#SDN#) on the SDN List pursuant to Executive Order 13850. The U.S. Government has also issued broad sanctions against the Bolivarian Republic of Venezuela ("the Venezuelan Government"). Because of these sanctions, NuStar, its affiliates and any affiliated U.S. persons are prohibited from transacting with PdVSA or the Venezuelan Government and any entities that PdVSA or the Venezuelan Government owns at least a 50% interest in, or any entities that are otherwise controlled by the Venezuelan Government, including PdVSA or any of its subsidiaries (unless authorized by OFAC). Customer is committed to compliance with U.S. economic sanctions authorities and all regulations, licenses, and guidance issued thereunder. Therefore, for petroleum or petroleum products ("Product") for which Customer solicits or any services Customer seeks to secure from NuStar, Customer certifies the following: 1) neither it or any of the vessel interests are on OFAC's SDN list; 2) neither it or any of the vessel interests are providing any services to PdVSA or the Venezuelan Government or any affiliates, organizations or agents acting on their behalf, at the time the Product or services is sought or received; 3) neither it or any of the vessel interests are carrying Product produced or owned by PdVSA or by the Venezuelan Government (as defined, title transfer to the product will be complete before the execution of this Agreement); and 5) neither it or any of the vessel interests are carrying Cargo on PDVSA's or the Venezuelan Government's behalf.

**NuStar Energy Services Inc.**
**PO BOX 781609**
**San Antonio TX. 78248**

NuStar

<u>SALES AGREEMENT</u>

---

NuStar Energy Services, Inc.
TERMS AND CONDITIONS OF SALE MARINE FUELS
Version Dated: May 29, 2009

1. DEFINITIONS:

In this Agreement (as such term is hereinafter defined), the following terms shall have the following meanings:

(a) "the Agreement" means the Principal Terms, Part I hereof, these General Terms and Conditions, Part II hereof and any attachments, schedules, or exhibits to such documents

(b) "barrel" or "bbl" means 42 U.S. standard gallons at 60° Fahrenheit.

(c) "BUYER" means a party or parties obligated to buy Marine Fuel under the Agreement. Should Marine Fuel be ordered by the BUYER as an agent, BUYER shall refer to such agent, as well as the principal, and both shall be bound by and liable for all obligations as fully and as completely as if they were both the principal, whether such principal be disclosed or undisclosed, and whether or not such agent purports to contract as agent only.

(d) "Delivery Date" means the date on which the Marine Fuel is to be delivered to the Vessel by the Seller.

(e) "Delivery Point" means the place at which the Marine Fuel purchased by the BUYER is to be delivered to the Vessel.

(f) "gallon" means a U.S. standard gallon of 231 cubic inches at 60° Fahrenheit.

(g) "General Terms" means these NuStar Terminals, N.V. General Terms and Conditions of Sale for Marine Fuel.

(h) "Marine Fuel" means the type(s), quantity(ies) and commercial grade(s) of bunker fuel oil, intermediate fuel oil ("IFO"), marine diesel oil ("MDO"), marine gas oil ("MGO") and/or other materials or petroleum products specified in the Principal Terms which the SELLER has agreed to sell to the BUYER.

(i) "metric ton" or "MT" means a total of 2204.6234 pounds avoirdupois.

(j) "Principal Terms" means any form of agreement, including, without limitation, a letter or telex which to any extent incorporates by reference or is subject to the General Terms; and

(k) "SELLER" means NuStar Terminals Marine Services, N.V., or it's designated affiliated company.

(l) "Vessel" means the marine vessel or vessels to which the Marine Fuel purchased by the BUYER is to be delivered.

2. QUALITY OF MARINE FUEL:

The BUYER shall have the sole responsibility for the selection and acceptance of Marine Fuel, including determination of compatibility with Marine Fuel already on board the Vessel, for use in the Vessel. The BUYER may appoint an inspector to analyze Marine Fuel delivered hereunder before it is pumped out to the SELLER's shore tanks and/or delivery vessel, provided BUYER gives SELLER no less than 48 hours notice so that appropriate security clearances can be made. Unless otherwise indicated to the BUYER in writing by the SELLER, any information provided to the BUYER regarding the characteristics of Marine Fuel at any delivery location shall not be construed as specifications of the Marine Fuel to be delivered hereunder, but only as indications of the characteristics of the Marine Fuel that has been available at that location from time to time. SELLER will advise latest sulphur content basis tank analysis results.

Three (3) commercial samples of the Marine Fuel shall be taken at the time of delivery from either the delivery vessel's manifold or SELLER's pipeline flange and immediately sealed. Two (2) additional samples will be taken in accordance with MARPOL requirements and will used solely for verifying conformity with Annex VI of MARPOL 73/78, not for commercial or any other purposes. The aforementioned samples shall be taken by one of the following three methods: 1) manual valve-setting continuous-drip sampler; or 2) time-proportional automatic sampler; or 3) flow-proportional automatic sampler. One (1) sealed sample of the commercial sample and one (1) sealed sample of the MARPOL sample shall be handed to the Vessel's Master, Chief Engineer or other officer, and the other samples shall be retained by the SELLER. ANY AND ALL TESTS TO DETERMINE QUALITY SHALL BE MADE ONLY FROM SELLER'S RETAINED COMMERCIAL SAMPLE and shall be made in accordance with standard test methods specified in the official publications of either SPI, ASTM, or IP. Other

NuStar Energy Services Inc.
PO BOX 781609
San Antonio TX. 78248

**NuStar**

SALES AGREEMENT

appropriate test methods may be used where no methods are prescribed in API, ASTM or IP publications on the date of this Agreement.

3. MEASUREMENTS AND TEST:

Seller will take the measurements and make the calculations necessary to determine the quantity of Product delivered. Such quantity shall be determined by calibrated meter on the pipeline or delivery vessel/barge or, if such is not available, calculating the difference between: the amount of Product in the delivering vessel/barge or shore tank before the transfer to the receiving Vessel; and the amount of Product in the delivering vessel/barge or shore tank after the transfer to the receiving vessel. The amount of Product in the delivering vessel/barge before and after the transfer will be determined by:
measuring the ullage in each compartment of the delivering vessel/barge by hand line; and using the strapping table for the delivering barge to convert the ullage measurements to Product quantities. Calculations of the quantity of Product delivered that are based on the amount of Product in the receiving Vessel before or after the transfer will not consider by Seller nor will they be admissible as evidence in court. A representative of the receiving vessel is invited to be present or Buyer may appoint a properly accredited surveyor to attend all measurements. Absent manifest error, the SELLER's determination of quantity shall be conclusive.  All measurements shall be adjusted to barrels or metric tons at 60° Fahrenheit temperature. All such adjustments shall be made in accordance with the latest joint Petroleum Measurement Tables of the American Petroleum Institute ("API"), the American Society of Testing and
Materials ("ASTM") and the Institute of Petroleum ("IP") designated API D-250, ASTM D-1250 and IP 200/52, respectively.

4. PRICE:

The price of Marine Fuel sold and delivered hereunder shall be the price set forth in the Principal Terms. All prices for Marine Fuel wherever delivered are exclusive of all taxes, duties, fees or other assessments imposed or levied by any government authority (whether at the Delivery Point or otherwise) or instrumentality thereof and all port charges, if any. Unless otherwise specified in the Principal Terms, price does not include the delivery charges for the Marine Fuel, and all such delivery charges shall be for the Buyer's account.

5. PAYMENT TERMS:

Unless otherwise provided in the Principal Terms, all sales shall be on a cash in advance or irrevocable letter of credit basis. All letters of credit procured by the BUYER in favor of the SELLER shall be in form and substance acceptable to the SELLER and issued only by a bank acceptable to the SELLER. Payment to the SELLER for all sales of Marine Fuel and all charges related thereto (including without limitation, delivery and any additional charges), if any, shall be made in full, without any right of set-off, discount or deduction. Payment shall be made in U.S. dollars by means of telegraphic transfer to the bank identified in the Principal Terms or in the SELLER's invoice, as the case my be, for deposit to the SELLER's account as specified therein. Such transfer shall quote the SELLER's invoice or order number, the BUYER's name, the Vessel supplied and the SELLER's account number to which funds shall be deposited.

If the SELLER has extended credit to the BUYER, and if the applicable credit period expires on a Saturday, Sunday or any other day when the SELLER's bank is closed for business, then the BUYER shall arrange for the payment in question to be made within such shorter period as will enable the payment to have been made by the last day within the applicable credit period when the SELLER's bank was open for business. Delivery documents may be provided to the BUYER at its request, but payment shall not be conditioned upon the BUYER' receipt of such documents. Notwithstanding any disputes regarding quality, quantity or other matter, the BUYER must initially pay the full amount due, and any disputes shall be resolved between the parties after such payment has been made. SELLER
may at any time, in its sole and absolute discretion, cancel any existing credit line granted to BUYER or refuse to extend credit to BUYER without notice.

6. ADEQUATE ASSURANCE:

NuStar will establish and may, in its sole discretion, notify Buyer of any credit dollar amount (the "Credit Limit") that will be applicable to the Buyer. The Credit Limit will be in such amount (including no amount) as Seller elects. Seller may change the Credit Limit at any time and notify Buyer of any such change.

6.1 If at any time Buyer's Outstanding Indebtedness (as defined below) exceeds the Credit Limit then in effect for Buyer, Buyer must reduce the Outstanding Indebtedness to any amount that is not greater than the Credit Limit then in effect for the Buyer by doing any, or any combination, of the following: (i) Paying to Seller an amount of the Outstanding Indebtedness; or (ii) Providing to Seller a letter of credit in a form and from a bank both reasonably satisfactory to Seller under which Seller will be permitted to draw an amount that is not less than the amount by which the Outstanding Indebtedness exceeds the Credit Limit.

6.2 For the purposes of this Section 8, "Outstanding Indebtedness" means, as of any day during the term of this Agreement, all amounts

NuStar Energy Services Inc.
PO BOX 781609
San Antonio TX. 78248

**NuStar**

SALES AGREEMENT

due or which will become due to Seller under all agreements between Seller and Buyer for completed delivery, including, without limitation, this Agreement, where delivery of, but no payment for, products have been made. If Buyer has failed to (i) pay Seller for any amount that is due (if such failure has not subsequently been cured) or (ii) be in default of this Agreement under Section 15 after expiration of applicable cure periods, then in addition to ceasing to deliver Product under the Agreement, and regardless of any payment terms then in effect for Buyer, Seller may declare all of the Outstanding Indebtedness to be due and payable and terminate this Agreement.

6.3 If Seller determines that the financial condition of Buyer has become impaired or unsatisfactory, Seller may require Buyer to provide Seller with satisfactory security or adequate assurances of performance. Seller's requirement for security or assurances may include changing the credit terms of this Agreement in which case Seller may require Buyer to:
(i) prepay by wire transfer at least by the first day that Buyer is open for business before Product delivery date the full estimated invoice amount under this Agreement, (ii) post at least two business days prior to Product delivery date a irrevocable, standby letter of credit, in form and substance specified by Seller, issued or confirmed by a bank acceptable to Seller, in an amount sufficient to cover the full estimated invoice amount under this Agreement or (iii) deliver to Seller at least two business days prior to Product delivery date a parent company guaranty in form and substance satisfactory to Seller of the prompt payment, when due, of any and all present or future indebtedness of Buyer as a result of any sale of Product under this Agreement. The change in credit terms will be effective 30 days after Seller's written notice to Buyer that it is requesting such a change. The exercise by Seller of any right under this paragraph is without prejudice to any claim for damages or any other right Seller may have under law.

7.  DELIVERIES:

Vessels will be bunkered as promptly as circumstances permit, but the SELLER shall not be liable under any circumstances for demurrage or for any loss due to delays or to prior commitments of available delivery vessels. If a delivery permit is required from any government authority or any instrumentally thereof, or by any public or private port authority, for any delivery of Marine Fuel hereunder, then the BUYER shall be responsible for obtaining the same. No deliveries shall be made until such time as the BUYER has obtained all required delivery permits. All costs and expenses occasioned by BUYER's failure to timely obtain such delivery permits shall be paid by BUYER.

Delivery of Marine Fuel hereunder shall be made by delivery vessel provided or caused to be provided by the SELLER to the BUYER's Vessel at the Delivery Point agreed upon by the SELLER and the BUYER. Unless otherwise agreed in the Principal Terms, the BUYER shall pay all the applicable delivery charges.

The BUYER shall give the SELLER written notices at least seventy-two (72), forty-eight (48) and twenty-four (24) hours prior to the Delivery Date of the estimated time(s) on such date when the Vessel will be ready to receive the Marine Fuel purchased by the BUYER. In such notice the BUYER shall, if necessary, advise the SELLER of any special condition, peculiarity, deficiency or defect of or with respect to the Vessel or its equipment which might delay, hinder or otherwise affect the mooring, unmooring or bunkering of the VESSEL. If the BUYER fails to provide these notice and the Vessel, for whatever reason, is unable or refuses to accept delivery on the Delivery Date, or if the BUYER provides such notice but requests an extension to the Delivery Date of more than thirty-six (36) hours after twelve(12) noon on such date, then the SELLER may, at its option, deliver the Marine Fuel to the Vessel at the requested new delivery time on a best efforts basis, suspend delivery subject to the BUYER's agreement to a new price for the Marine Fuel or cancel the delivery altogether, with or without prejudice to the SELLER's rights under this Agreement.

The BUYER shall pay not less than one hundred percent (100%) of the delivery costs of the quantity of Marine Fuel ordered, irrespective of the amount the BUYER takes delivery of, and the BUYER shall also be charged for all additional expenses incurred by the SELLER in connection with any failure by BUYER to take delivery of the full quantity (+ /-5.0%) ordered by the BUYER. In the event the BUYER fails to take delivery of the full amount ordered or tendered (+ /-5.0%), whichever is less, of Marine Fuel the SELLER may charge the BUYER the amount of loss sustained by having to sell the Marine Fuel in down-graded form at a lower price than that at which is was ordered by BUYER. SELLER furthermore reserves the right to levy and collect a cancellation fee of $5 per metric ton, with a minimum cancellation charge of $5,000 if the delivery is canceled, terminated, rescinded or refused by BUYER for any reason.

If the BUYER causes delays to the SELLER's vessels and/or facilities in effecting deliveries, the BUYER shall pay demurrage at the SELLER's established rates, and reimburse the SELLER's for all other expenses in connection therewith.

The Vessel receiving the Marine Fuel shall be solely responsible for making all connections and disconnections between the delivery hose and receiving Vessel's intake pipe, and shall render all other necessary assistance and provide sufficient tankage and equipment to receive promptly all delivers hereunder. The Vessel receiving delivery of the Marine Fuel shall be deemed to have sole and complete control, supervision and direction of the bunkering operations, including the responsibility for weather and sea conditions as they affect the delivery operations.

**NuStar Energy Services Inc.**
PO BOX 781609
San Antonio TX. 78248

**NuStar**

<u>SALES AGREEMENT</u>

**7. TITLE AND RISK:**

Delivery shall be considered complete and title to, risk of loss and liability for all Marine Fuel supplied hereunder shall pass from the SELLER to the BUYER as the Marine Fuel passes the flange of the Vessel or, in the case of delivery by drum, as the Marine Fuel passes the Vessel's rail, at which point Seller's responsibility shall cease and Buyer shall assume all risk of loss, damage, deterioration, or evaporation as to the Marine Fuel so delivered.

**8. DEMURAGE AND DELAYS:**

The SELLER shall not be liable for any demurrage by the BUYER or the Vessel caused directly or indirectly by delays due to or resulting from weather (whether unusual or normal), local congestion at the Delivery Point affecting the SELLER's delivery equipment, the prior commitment, nonavailability and/or malfunction of delivery equipment, or any event of Force Majeure. The BUYER shall be liable for demurrage at rates established by the SELLER and for losses incurred by the SELLER as a result of any delay caused directly or indirectly by the BUYER or the Vessel in the use of delivery equipment.

**9. WARRANTIES:**

The BUYER is solely responsible for specifying to the SELLER the type, grade and quantity of Marine Fuel to be supplied under this Agreement. The SELLER warrants only that the Marine Fuel supplied shall conform to the specifications stated in the SELLER's signed confirmation document, and that SELLER will convey to BUYER title thereto free and clear of all taxes, liens and encumbrances existing or in favor of any third parties. ALL OTHER WARRANTIES, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, WORKMANLIKE PERFORMANCE, OR OTHER WARRANTY OF QUALITY AND ANY OTHER CONDITIONS AND AGREEMENTS WHATSOEVER (WHETHER STATUTORY OR OTHERWISE) ARE EXPRESSLY EXCLUDED AND DISCLAIMED BY THE SELLER AND THE SELLER's AGENTS MAKE NO WARRANTIES WHICH EXTEND BEYOND THE EXPLICIT DESCRIPTION CONTAINED IN THIS AGREEMENT.

THE BUYER's SOLE AND EXCLUSIVE REMEDY SHALL BE LIMITED TO REPLACEMENT OF MARINE FUEL BY THE SELLER OR REIMBURSEMENT OF PURCHASE PRICE BY THE SELLER LESS THE PROCEEDS OF ANY SALE OF THE MARINE FUEL WHICH THE BUYER MAY HAVE EFFECTED. REASONABLE REPLACEMENT COSTS SHALL BE FOR THE SELLER's ACCOUNT UNLESS THE SELLER PROVIDES DUE NOTICE TO THE BUYER THAT THE SELLER DEEMS THE BUYER's REJECTION OF MARINE FUEL TO BE WRONGFUL OR IN VIOLATION OF THIS AGREEMENT. THE BUYER's SOLE REMEDY, AS SET FORTH ABOVE, IS TO THE EXCLUSION OF ALL OTHER REMEDIES, INCLUDING, BUT NOT LIMITED TO, CLAIMS FOR LOSS OR USE, DETENTION AND ALL OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING INJURY OR DAMAGE (i) TO VESSELS WHICH THE BUYER REPRESENTS OR IS RESPONSIBLE FOR AS AGENT, (ii) TO CONTENTS AND EQUIPMENT OF SUCH VESSELS, (iii) TO CARGO OR TO PERSONS ABOARD SUCH VESSELS OR ADJACENT THERETO, (iv) LOSS OF PROFIT, DELAYS, OR (v) ALL OTHER DAMAGES OF LIKE OR DIFFERENT KIND SUFFERED BY REASON OF THE PROVISION OF MARINE FUEL OR MECHANICAL FAILURE CAUSED BY SAID MARINE FUEL, AND WHETHER OR NOT OCCASIONED BY THE SELLER's NEGLIGENCE. IF ANY PORTION OF THIS PARAGRAPH SHALL FOR ANY REASON BE DETERMINED TO BE VOID OR UNENFORCEABLE THE REMAINDER OF THIS PARAGRAPH SHALL REMAIN IN FULL FORCE AND EFFECT.

**10. CLAIMS:**

Any claim by the BUYER as to shortage must be submitted in the form of a letter of protest as no notation of any kind will be accepted on the Marine Fuel Delivery Note. If a letter of protest is not received within the fifteen (15) day time period described herein below, any claim for short delivery shall be deemed to be waived by BUYER. In any event, the SELLER's figures as to the quantity delivered to the BUYER's vessel shall be deemed conclusive. Any claim by the BUYER as to shortage in quantity of Marine Fuel delivered by the SELLER must be made within fifteen (15) days after the Marine Fuel is delivered. If the BUYER makes a claim regarding the quality or quantity of the Marine Fuel furnished by the SELLER, the BUYER shall permit, or obtain permission for a surveyor acting on the SELLER's behalf to board the BUYER's Vessel immediately, for the purpose of ullaging all Vessels' reservoirs, obtaining samples of the Marine Fuel, surveying all machinery which the BUYER asserts has been damaged, and all fuel oil handling machinery and procedures, and reviewing maintenance records and such other Vessel records as the surveyor deems appropriate. In the absence of the fifteen (15) day notice required hereunder and a survey on behalf of the SELLER, any such claim based on deficiency in quality shall be forever barred, and the BUYER shall pay the direct and indirect costs and expenses of obtaining the survey.

**11. FINANCIAL RESPONSIBILITY:**

All sales of Marine Fuel hereunder are made on the credit of the Vessel as well as on the credit of the BUYER. The SELLER will have and may assert any and all maritime liens available to it against the Vessel, wherever found, for the full amount of the delivered price of the marine fuel supplied to such Vessel by the Seller, plus accrued interest and collection costs. If the BUYER in any way breaches this Agreement, defaults in the payment of any indebtedness to the SELLER (whether arising out of this Agreement or otherwise) or becomes

NuStar Energy Services Inc.
PO BOX 781609
San Antonio TX. 78248

**NuStar**

<u>SALES AGREEMENT</u>

bankrupt or insolvent, or if the SELLER at any time considers the financial condition of the BUYER to be unsatisfactory, then the SELLER may, in addition to any other rights and remedies it may have, cancel or suspend deliveries hereunder until such time as the BUYER remedies such breach or default and/or provides suitable additional security and/or guarantees acceptable to the SELLER.

**12. INDEMNITY:**

The BUYER shall indemnify and hold the SELLER and the SELLER's agents harmless from and against, (1) any and all claims, demands, actions, causes of action, suits and all other liabilities whatsoever on account of, or by reason of, or growing out of damage to property (including property of the SELLER, the BUYER and third parties) or for injury or death of any person (whether such person is an employee or agent of the SELLER, the BUYER or a third party), whether the same result from negligence, in whole or in part, of the BUYER or the BUYER's employees, breach of the BUYER's warranties hereunder, or any other theory of liability of the like or different character; (2) any claim asserted by the BUYER, its agents or employees or subcontractors, including, but not limited to claims for personal injury or property damage arising out of the delivery of Marine Fuel under this Agreement, including a claim based solely upon the negligence or culpability of the SELLER and (3) all costs and expenses incurred by the SELLER in investigating and defending any such claim, demand, suit or liability, including the SELLER's attorney fees and court costs.

**13. COLLECTIONS:**

Without limitation to the SELLER's rights hereunder or otherwise, any payment not made on the due date shall bear interest at the rate of the lesser of (i) one and one-half percent (1-1/2%) per month, or (ii) the maximum rate allowed by law, running from the due date until the date payment is received by the SELLER's bank. In the event the SELLER institutes legal proceedings for collection of payment not made by the BUYER when due, all expenses incurred by the SELLER in connection with such proceedings (including, without limitation, attorneys' fees and court costs) shall be for the BUYER's account.

**14. LIMITATION OF LIABILITY:**

The Seller shall not be liable for special, indirect, consequential, punitive or exemplary damages of any kind arising out of or in connection with the performance or non-performance of this Agreement.

**15. ENVIRONMENTAL PROTECTION:**

The BUYER represents and warrants that the Vessel is properly insured, equipped, maintained and operated so as to avoid the escape, spillage or discharge of oil (a "spill") at the time of all deliveries of Marine Fuel hereunder. If a spill does occur while Marine Fuel is being delivered by the SELLER to the BUYER and the Vessel, then the Buyer shall promptly take such action as is reasonably necessary to remove the oil and mitigate the effects of such spill; however, notwithstanding the cause of such spill, the SELLER is hereby authorized at its/their option, to take such measures and incur such expenses (whether by employing its own resources or by contracting with others) as are reasonably necessary to remove the oil and mitigate the effects of such spill. In the event the SELLER has exercised its option to remove the oil and mitigate the effects of such spill as aforesaid, the BUYER agrees to cooperate and render such assistance as is reasonably requested by the SELLER and further agrees that BUYER or their insurance carrier shall promptly pay any and all expenses, damages, costs, fines and penalties arising from such spill or any pollution caused thereby. The BUYER or their insurance shall recover from the SELLER only that amount of expenses, etc. equal to the degree of provable negligence of the SELLER as determined by SELLER's insurance settling agent. The BUYER and SELLER shall each give the other copies of all documents and other information concerning the spill as required by any law, regulation, or settling agent.

**16. FORCE MAJEURE:**

In the event that the SELLER is prevented from making deliveries hereunder or the BUYER is prevented from accepting deliveries due directly or indirectly to any Force Majeure, the obligation of the SELLER to deliver and of the BUYER to receive Marine Fuel shall be suspended during the continuance of such Force Majeure condition and neither party shall be liable to the other for demurrage, loss or damage of any nature whatsoever due to such delay. In the event the SELLER does not at any time have available sufficient Marine Fuel to supply all of the SELLER's customers due to the intervention of Force Majeure circumstances, the SELLER shall have the right to prorate such Marine Fuel as may be available between the BUYER and all other customers of the SELLER, and the SELLER shall not be required to purchase Marine Fuel to replace supplies so curtailed, or to make use of other than the SELLER's normal transportation or other facilities. Nothing in this article concerning the existence of Force Majeure circumstances shall affect the BUYER's obligation to make payment to the SELLER for deliveries of Marine Fuel made and payments required hereunder which accrued prior to the occurrence of the Force Majeure circumstances. Until the Force Majeure circumstances shall cease to exist, this contract merely shall be suspended and shall not terminate. If a Force Majeure event occurs, the SELLER shall have the option of canceling

NuStar Energy Services Inc.
PO BOX 781609
San Antonio TX. 78248

**NuStar**

SALES AGREEMENT

this contract. Force Majeure shall include, but not be restricted to, acts of God or the public enemy, perils of navigations, floods, fire, hostilities, war (declared or undeclared), executive or administrative orders or acts of either general or particular application of any de jure or de facto government having or claiming jurisdiction over a party or vessel, facility or supplies, or such orders or acts of any officer or agent purporting to act under the authority of any such government, or requests of any such officer or agent purporting to act, under the authority of any such government, of requests of any such officer or agent purporting to act, illegality arising from applicable domestic or foreign laws or regulations, blockage, labor disturbances, strikes, riots, insurrections, civil commotions, storms, earthquakes, accidents, breakdown or injury to or expropriation, confiscation or requisitioning of transportation or delivery facilities exhaustion or unavailability of supplies for any reason, partial or total interruption, loss or shortage of transportation facilities, or imposition of restrictions or regulations by any government or governmental agency which render performance impossible or frustrate the commercial purpose of this contract.

17. NOTICES:

All notices, statements or other communications to be given by the BUYER to the SELLER shall be sufficient if given in writing by registered mail, telex or cable as follows:

To the BUYER: At the address stated in the Principal Terms, or if the Agreement is concluded by or through an agent of the BUYER, to such agent.

To the SELLER:
NUSTAR ENERGY SERVICES, INC.
19003 IH-10 West
San Antonio, TX 78257

18. ASSIGNMENT:

The BUYER may not assign any of its rights or obligations under this Agreement without the SELLER's prior written consent.

19. DISPUTES:

Any judicial proceeding brought in connection with this Agreement may be brought in any court of competent jurisdiction in Houston, TX; and both parties hereby (i) accept, generally and unconditionally, the exclusive jurisdiction of such courts and any related appellate courts, and irrevocably agree to be bound by any judgment rendered thereby, subject to any right of appeal, and (ii) irrevocably waive any objection they may now or hereafter have as to any such proceeding brought in such a court or that such court is an inconvenient forum. The SELLER shall have the right under the laws of the State of Texas, or such other law as may be deemed applicable in the circumstances, to arrest the BUYER's Vessel or attach property of the BUYER whether said BUYER's Vessel and property are within the United States of America or elsewhere. The agreement to litigate all disputes arising under this contract in any court of competent jurisdiction in Houston, TX, shall not be construed as altering, waiving or otherwise depriving the SELLER of the right to arrest the BUYER's Vessel, or to attach the BUYER's property in a jurisdiction other than the United States of America. No action or other proceedings shall be brought by the BUYER for any alleged breach of this Agreement more that one (1) year after the accrual of the cause of action therefore; provided, however, that nothing in this Section 19 shall be deemed to extend any periods within which the BUYER must assert the BUYER's rights, including, but not limited to, rejection rights, as provided in this Agreement.

20. GOVERNING LAW:

This Agreement shall be interpreted in accordance with the law the State of Texas, applicable to agreements made and to be performed entirely within the United States of America without regard to any conflict of laws provision or case law of the United States of America which would otherwise cause the application of the law of any other jurisdiction. The United Nations Convention on Contracts for the International Sale of Goods (1980) shall not apply.

21. TAXES:

Buyer will pay all taxes and assessments arising out of sale of the Product, including any import fee, export fee, customs duty, sales tax, excise tax, or value added tax, but excluding any income tax assessed against NuStar.

22. MISCELLANEOUS:

This Agreement may not be modified, discharged or terminated except by an instrument in writing signed by each of the parties hereto.

No benefit or right accruing to either party shall be waived unless the waiver is reduced to writing and signed by both parties. No waiver

**NuStar Energy Services Inc.**
PO BOX 781609
San Antonio TX. 78248

by either party of any provision of this Agreement shall be construed as a waiver of any other provision, nor shall a waiver of any single default be construed as a waiver of any other prior or subsequent like or different default. The terms and conditions of this Agreement shall extend to, be binding upon and inure to the benefit of the successors, administrators, legal representatives, and permitted assigns of the respective parties hereto.

The descriptive headings contained in this Agreement are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

This Agreement constitutes the entire understanding between the parties and supersedes all prior oral or written agreements, representations, and/or warranties.

It shall be the responsibility of BUYER to comply and advise its employees, agents, and customers to comply with the health and safety requirements for each of the Marine Fuels supplied hereunder as specified in the SELLER's published health and safety information then current for such Marine Fuel, both during and after delivery, and to ensure so far as possible that any user of any such Marine Fuels avoids, without limitation, any frequent or prolonged exposure or skin contact with the Marine Fuel. Seller accepts no responsibility for any consequences arising from any failure by such persons to comply with such health and safety requirements or arising from such contact.

23.    DUTY TO COMPLY.

(a)    In the performance of its duties under this Agreement, each Party shall comply in all material respects with all Law.

(b)    Each Party represents and covenants that it shall act with the utmost integrity in all of its dealings with, and any business related to, the other Party.  It shall comply with the Foreign Corrupt Practices Act of 1977, 15 U.S.C. §§ 78dd-1, et seq. as the same may be amended from time to time, as well as any other applicable anti-corruption and/or anti-bribery Laws (collectively, the "Anti-Bribery Laws") applicable to the dealings with each other, third parties and all matters related to the performance of this Agreement.  It (i) shall not pay, give, offer, promise, solicit, request or accept anything of value to or from any person or entity (including its employees, agents or representatives) in order to influence the decision of such person or to gain a business, contractual, or regulatory advantage, (ii) shall maintain adequate internal controls and procedures to prevent violations of Anti-Bribery Laws, including violations by its Representatives and/or other contracted parties and its or their intermediaries, and (iii) shall ensure that any third party engaged to provide any goods and/or services or to perform any act governed by this Agreement also complies with this Section.

(c)    Each Party represents, warrants, and covenants to the other Party that (i) it shall not directly or indirectly do business with any Restricted Party in connection with the Agreement; (ii) the Agreement shall not involve the provision of any goods, services, or technology in support of exploration or production for deepwater, Arctic offshore, or shale projects that have the potential to produce oil in Russia or Russian waters to any entity subject to Directive 4, or any entity owned 50 percent or more by one or more such persons; (iii) the Agreement shall not involve the provision of any goods, services, or technology in support of exploration or production for deepwater, Arctic offshore, or shale projects initiated on or after January 29, 2018 that have the potential to produce oil in any location and in which any entity subject to Directive 4, or any entity owned 50 percent or more by one or more such persons, has a 33 percent or greater ownership interest or ownership of a majority of the voting interests; and (iv) it shall not otherwise violate or cause any violation of any applicable Sanctions in connection with this Agreement.  Each Party reserves the right to screen the other Party and its Representatives. Each Party shall ensure that any third party engaged to provide any goods and/or services or to perform any act governed by this Agreement also complies with this Section.

(d)    ON JANUARY 28, 2019, THE U.S. DEPARTMENT OF THE TREASURY'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") DESIGNATED PETRÓLEOS DE VENEZUELA S.A. ("PDVSA") ON THE SPECIALLY DESIGNATED NATIONALS ("SDN") LIST PURSUANT TO EXECUTIVE ORDER 13850.  AS A RESULT OF THIS DESIGNATION, NUSTAR AND ITS AFFILIATED U.S. PERSONS ARE GENERALLY ARE PROHIBITED FROM TRANSACTING WITH PDVSA AND ENTITIES OWNED 50% OR GREATER BY ONE OR MORE SDNS, SUCH AS PDVSA SUBSIDIARIES.  ON THE SAME DATE, OFAC ISSUED GENERAL LICENSE 12(B), WHICH REQUIRED SUCH PERSONS TO WIND DOWN ACTIVITIES INVOLVING PDVSA BY FEBRUARY 27, 2019.

EACH PARTY IS COMMITTED TO COMPLIANCE WITH U.S. ECONOMIC SANCTIONS AUTHORITIES AND ALL REGULATIONS, LICENSES AND GUIDANCE ISSUED THEREUNDER.  THEREFORE, FOR MARINE FUEL FOR WHICH EACH PARTY SOLICITS OR ANY SERVICES A PARTY SEEKS TO SECURE, INCLUDING THE PROVISION OF SERVICES TO THE CREW OR VESSEL TRANSPORTING SUCH MARINE FUEL, SUCH PARTY CERTIFIES THAT (I) NEITHER IT NOR THE VESSEL INTERESTS ARE IN THE OFAC SDN LIST; (II) NEITHER IT NOR ANY OF THE VESSEL INTERESTS ARE CARRYING PRODUCT PRODUCED BY PDVSA; (III) NEITHER IT NOR ANY VESSEL INTERESTS ARE CARRYING PRODUCT PURCHASED FROM PDVSA; AND (IV) NEITHER IT NOR ANY VESSEL INTERESTS ARE CARRYING PRODUCT ON PDVSA'S BEHALF.  IF THE VESSEL HAS MARINE FUEL OR CARGO ON BOARD, CUSTOMER OR A THIRD PARTY UNAFFILIATED WITH PDVSA HAS FULL AND UNENCUMBERED TITLE TO THE MARINE FUEL OR CARGO.

SELLER ALSO CERTIFIES THAT (1) PDVSA (OR ANY ENTITY IN WHICH PDVSA OWNS, EITHER DIRECTLY OR INDIRECTLY, A 50% OR GREATER INTEREST THAT DOES NOT BENEFIT FROM ANOTHER OFAC GENERAL LICENSE), HAD NO IDENTIFIABLE LIEN, ENCUMBRANCE OR PROPERTY INTEREST, CONTINGENT OR OTHERWISE, IN THE MARINE FUEL ON OR AFTER FEBRUARY 27, 2019; AND (2) NO SDN



NuStar Energy Services Inc.
PO BOX 781609
San Antonio TX. 78248

SALES AGREEMENT

(OR ANY ENTITY IN WHICH AN SDN OWNS, EITHER DIRECTLY OR INDIRECTLY, A 50% OR GREATER INTEREST) HAS AN IDENTIFIABLE LIEN, ENCUMBRANCE OR PROPERTY INTEREST, CONTINGENT OR OTHERWISE, IN THE MARINE FUEL.

Each Party shall immediately notify the other Party in writing of any violation or alleged violation of Laws or this Section 22 and, upon request, shall provide the other Party with all evidence of inspections or audits by any Governmental Authority with respect to such Marine Fuel.



NuStar Energy Services, Inc.
19003 IH-10 West
San Antonio TX. 78257
1-800-711-5257

## Invoice 90551153 / 01/31/2022

Order NO. 352974          Delivery NO. 2420115583          Customer NO. 109732

BILL TO:
GLANDER INTERNATIONAL BUNKERING INC
2401 PGA BLVD., SUITE 236
Palm Beach Gardens, FL 33410

WIRING INSTRUCTIONS:
NuStar Energy Services, Inc.
JPMorgan Chase Bank, N.A.
New York, NY
ABA: 021000021
Acct Nbr. 323391729
SWIFT Code: CHASUS33

CONTRACT NO:       40231350
SHIPPING ORDER:    195295
DELIVERY DATE:     01/28/2022
ORIGIN:            B620 Texas City Vessel Bunkering
PORT:              HOUSTON
TERMS OF DELIV:    Vessel Intake Flange
VESSEL:            CLIPPER ENYO
BROKER:

NOTE:

| PRICING ELEMENT | PRICE | QTY | UOM | BILLED |
|---|---|---|---|---|
| INTERMEDIATE FUEL OIL 380 | 503.000000  / MT | 850.610 | MT | 427,856.83 |
| Harbor fees-IFO | | | | 32.00 |
| Barging +  srchg(min) | | | | 11,798.60 |

Due in USD on 02/25/2022                                                          439,687.43

TERMS:  WIRE 30 CAL DAYS FROM DELIVERY

NOTICE:  ALL COMMUNICATIONS OR QUESTIONS CONCERNING DISPUTED DEBTS, ARE TO BE SENT TO: NUSTAR ENERGY SERVICES - ATTN: BUNKERDEPT.  PO BOX 781609 SAN ANTONIO, TX 78278-1609. FOR QUESTIONS CONCERNING CREDIT ISSUES, PLEASE EMAIL CREDIT@NUSTARENERGY.COM OR BY FAX AT 210.918.5422

## ATTACHMENT E
## to Ex. 1

|    | A | B | C | D | E |
|----|---|---|---|---|---|
| 1  | Create Date | Nomination Date | ETA Valid From | ETA Valid To | Sold To |
| 2  | 02/17/2020 | 02/17/2020 | 03/05/2020 | 00/00/0000 | 0000109732 |
| 3  | 03/05/2020 | 03/05/2020 | 03/14/2020 | 00/00/0000 | 0000109732 |
| 4  | 03/09/2020 | 03/09/2020 | 04/06/2020 | 00/00/0000 | 0000109732 |
| 5  | 03/09/2020 | 03/09/2020 | 03/15/2020 | 00/00/0000 | 0000109732 |
| 6  | 03/25/2020 | 03/25/2020 | 03/31/2020 | 00/00/0000 | 0000109732 |
| 7  | 06/25/2020 | 06/25/2020 | 07/07/2020 | 00/00/0000 | 0000109732 |
| 8  | 08/14/2020 | 08/14/2020 | 08/24/2020 | 00/00/0000 | 0000109732 |
| 9  | 08/20/2020 | 08/20/2020 | 09/09/2020 | 00/00/0000 | 0000109732 |
| 10 | 09/22/2020 | 09/22/2020 | 10/04/2020 | 00/00/0000 | 0000109732 |
| 11 | 10/21/2020 | 10/21/2020 | 11/02/2020 | 00/00/0000 | 0000109732 |
| 12 | 10/23/2020 | 10/23/2020 | 10/28/2020 | 10/28/2020 | 0000109732 |
| 13 | 10/29/2020 | 10/29/2020 | 11/10/2020 | 00/00/0000 | 0000109732 |
| 14 | 10/31/2020 | 10/31/2020 | 11/08/2020 | 00/00/0000 | 0000109732 |
| 15 | 01/06/2021 | 01/06/2021 | 01/16/2021 | 00/00/0000 | 0000109732 |
| 16 | 01/08/2021 | 01/08/2021 | 01/27/2021 | 00/00/0000 | 0000109732 |
| 17 | 02/10/2021 | 02/10/2021 | 03/03/2021 | 03/03/2021 | 0000109732 |
| 18 | 03/05/2021 | 03/05/2021 | 03/09/2021 | 00/00/0000 | 0000109732 |
| 19 | 04/08/2021 | 04/08/2021 | 04/15/2021 | 00/00/0000 | 0000109732 |
| 20 | 06/22/2021 | 07/19/2021 | 07/30/2021 | 00/00/0000 | 0000109732 |
| 21 | 06/22/2021 | 07/26/2021 | 08/04/2021 | 00/00/0000 | 0000109732 |
| 22 | 12/01/2021 | 12/01/2021 | 12/03/2021 | 00/00/0000 | 0000109732 |
| 23 | 12/01/2021 | 12/01/2021 | 12/07/2021 | 00/00/0000 | 0000109732 |
| 24 | 03/11/2022 | 03/11/2022 | 03/12/2022 | 00/00/0000 | 0000109732 |
| 25 | 01/02/2020 | 01/02/2020 | 01/12/2020 | 00/00/0000 | 0000109732 |
| 26 | 01/23/2020 | 01/23/2020 | 02/06/2020 | 00/00/0000 | 0000109732 |
| 27 | 03/23/2020 | 03/23/2020 | 03/25/2020 | 03/25/2020 | 0000109732 |
| 28 | 04/12/2020 | 04/12/2020 | 04/14/2020 | 00/00/0000 | 0000109732 |
| 29 | 04/22/2020 | 04/22/2020 | 04/25/2020 | 04/25/2020 | 0000109732 |
| 30 | 04/22/2020 | 04/22/2020 | 05/10/2020 | 05/10/2020 | 0000109732 |
| 31 | 04/30/2020 | 04/30/2020 | 05/06/2020 | 00/00/0000 | 0000109732 |
| 32 | 05/05/2020 | 05/05/2020 | 05/23/2020 | 05/23/2020 | 0000109732 |
| 33 | 05/08/2020 | 05/08/2020 | 05/10/2020 | 00/00/0000 | 0000109732 |
| 34 | 06/16/2020 | 06/16/2020 | 06/21/2020 | 00/00/0000 | 0000109732 |
| 35 | 06/30/2020 | 06/30/2020 | 07/12/2020 | 07/12/2020 | 0000109732 |
| 36 | 07/01/2020 | 07/01/2020 | 07/15/2020 | 07/15/2020 | 0000109732 |
| 37 | 07/21/2020 | 07/21/2020 | 08/05/2020 | 08/05/2020 | 0000109732 |
| 38 | 08/17/2020 | 08/17/2020 | 09/02/2020 | 09/02/2020 | 0000109732 |
| 39 | 08/25/2020 | 08/25/2020 | 08/31/2020 | 08/31/2020 | 0000109732 |
| 40 | 10/20/2020 | 10/20/2020 | 10/29/2020 | 00/00/0000 | 0000109732 |
| 41 | 10/20/2020 | 10/20/2020 | 10/27/2020 | 00/00/0000 | 0000109732 |
| 42 | 11/09/2020 | 11/09/2020 | 11/18/2020 | 00/00/0000 | 0000109732 |
| 43 | 11/29/2020 | 11/29/2020 | 12/05/2020 | 12/05/2020 | 0000109732 |
| 44 | 12/07/2020 | 12/07/2020 | 12/13/2020 | 12/13/2020 | 0000109732 |
| 45 | 12/10/2020 | 12/10/2020 | 12/20/2020 | 00/00/0000 | 0000109732 |
| 46 | 12/11/2020 | 12/11/2020 | 12/19/2020 | 12/19/2020 | 0000109732 |
| 47 | 01/05/2021 | 01/05/2021 | 01/12/2021 | 00/00/0000 | 0000109732 |
| 48 | 01/07/2021 | 01/07/2021 | 01/12/2021 | 00/00/0000 | 0000109732 |
| 49 | 01/07/2021 | 01/07/2021 | 01/16/2021 | 00/00/0000 | 0000109732 |

ATTACHMENT F
to Ex. 1

| | F | G | H | I |
|---|---|---|---|---|
| 1 | Sold To Name | Vessel | Material | Qty |
| 2 | GLANDER INTERNATIONAL BUNKERING INC | WIND SURF | MGO-DMA | 149.863 |
| 3 | GLANDER INTERNATIONAL BUNKERING INC | WIND SURF | MGO-DMA | 99.818 |
| 4 | GLANDER INTERNATIONAL BUNKERING INC | CLIPPER ERIS | IFO380 | 881.260 |
| 5 | GLANDER INTERNATIONAL BUNKERING INC | MARIB SPIRIT | MGO-DMA | 349.905 |
| 6 | GLANDER INTERNATIONAL BUNKERING INC | WIND SURF | MGO-DMA | 100.112 |
| 7 | GLANDER INTERNATIONAL BUNKERING INC | CLIPPER ERIS | IFO380 | 1,100.520 |
| 8 | GLANDER INTERNATIONAL BUNKERING INC | NAVIGATOR OBERON | IFO380 0.5 | 706.480 |
| 9 | GLANDER INTERNATIONAL BUNKERING INC | NAVIGATOR NEPTUNE | IFO380 0.5 | 850.200 |
| 10 | GLANDER INTERNATIONAL BUNKERING INC | LEO GREEN | IFO380 | 1,450.040 |
| 11 | GLANDER INTERNATIONAL BUNKERING INC | CMA CGM LA TRAVIA | IFO380 0.5 | 2,446.650 |
| 12 | GLANDER INTERNATIONAL BUNKERING INC | NALINEE NAREE | IFO380 0.5 | 280.090 |
| 13 | GLANDER INTERNATIONAL BUNKERING INC | ARKADIA | IFO380 0.5 | 300.470 |
| 14 | GLANDER INTERNATIONAL BUNKERING INC | NORDIC TRISTAN | IFO380 0.5 | 860.610 |
| 15 | GLANDER INTERNATIONAL BUNKERING INC | CMA CGM LAMARTINE | MGO-DMA | 650.600 |
| 16 | GLANDER INTERNATIONAL BUNKERING INC | GAS PLANET | IFO380 | 1,000.860 |
| 17 | GLANDER INTERNATIONAL BUNKERING INC | ARISTOFANIS | IFO380 | 800.880 |
| 18 | GLANDER INTERNATIONAL BUNKERING INC | SULPHUR ENTERPRISE | MGO-DMA | 402.240 |
| 19 | GLANDER INTERNATIONAL BUNKERING INC | MSC LUDOVICA | IFO380 0.5 | 2,500.320 |
| 20 | GLANDER INTERNATIONAL BUNKERING INC | APL DANUBE | IFO380 | 1,700.450 |
| 21 | GLANDER INTERNATIONAL BUNKERING INC | ZIM SHENZHEN | IFO380 | 2,600.840 |
| 22 | GLANDER INTERNATIONAL BUNKERING INC | DISNEY WONDER | MGO-DMA | 580.500 |
| 23 | GLANDER INTERNATIONAL BUNKERING INC | DISNEY WONDER | MGO-DMA | 578.590 |
| 24 | GLANDER INTERNATIONAL BUNKERING INC | CLIPPER ENYO | IFO380 | 310.860 |
| 25 | GLANDER INTERNATIONAL BUNKERING INC | ARWA SPIRIT | MGO-DMA | 374.990 |
| 26 | GLANDER INTERNATIONAL BUNKERING INC | SUN GAS | MGO-DMA | 190.900 |
| 27 | GLANDER INTERNATIONAL BUNKERING INC | INDUSTRIAL ROYAL | IFO380 0.5 | 420.000 |
| 28 | GLANDER INTERNATIONAL BUNKERING INC | CLIPPER ERIS | IFO380 | 260.490 |
| 29 | GLANDER INTERNATIONAL BUNKERING INC | NAVIGATOR UMBRIO | IFO380 0.5 | 599.910 |
| 30 | GLANDER INTERNATIONAL BUNKERING INC | PACIFIC MARS | IFO380 0.5 | 910.600 |
| 31 | GLANDER INTERNATIONAL BUNKERING INC | CORINTHIAN SPIRE | IFO380 0.5 | 250.200 |
| 32 | GLANDER INTERNATIONAL BUNKERING INC | SUN GAS | MGO-DMA | 130.380 |
| 33 | GLANDER INTERNATIONAL BUNKERING INC | PACIFIC MARS | MGO-DMA | 90.290 |
| 34 | GLANDER INTERNATIONAL BUNKERING INC | HC BEA LUNA | IFO380 0.5 | 290.510 |
| 35 | GLANDER INTERNATIONAL BUNKERING INC | CLIPPER EIRENE | IFO380 | 400.320 |
| 36 | GLANDER INTERNATIONAL BUNKERING INC | LEO GREEN | IFO380 | 1,250.020 |
| 37 | GLANDER INTERNATIONAL BUNKERING INC | PACIFIC MARS | IFO380 0.5 | 600.940 |
| 38 | GLANDER INTERNATIONAL BUNKERING INC | NAVIGATOR ORION | IFO380 0.5 | 830.400 |
| 39 | GLANDER INTERNATIONAL BUNKERING INC | MTM GIBRALTER | MGO-DMA | 100.310 |
| 40 | GLANDER INTERNATIONAL BUNKERING INC | BUXCOAST | IFO380 0.5 | 3,250.120 |
| 41 | GLANDER INTERNATIONAL BUNKERING INC | AGIOS DIMISTRIOS | IFO380 | 500.430 |
| 42 | GLANDER INTERNATIONAL BUNKERING INC | ZIM SHENZHEN | IFO380 | 2,699.740 |
| 43 | GLANDER INTERNATIONAL BUNKERING INC | PRO ONYX | IFO380 | 189.920 |
| 44 | GLANDER INTERNATIONAL BUNKERING INC | SEAMUSE | IFO380 0.5 | 600.480 |
| 45 | GLANDER INTERNATIONAL BUNKERING INC | CREOLE SPIRIT | MGO-DMA | 1,100.550 |
| 46 | GLANDER INTERNATIONAL BUNKERING INC | ARKADIA | IFO380 0.5 | 300.360 |
| 47 | GLANDER INTERNATIONAL BUNKERING INC | MSC BARCELONA | IFO380 0.5 | 2,500.210 |
| 48 | GLANDER INTERNATIONAL BUNKERING INC | MSC AMERICA | IFO380 | 2,500.530 |
| 49 | GLANDER INTERNATIONAL BUNKERING INC | MSC CADIZ | IFO380 0.5 | 3,200.350 |

| | J | K | L | M | N | O |
|---|---|---|---|---|---|---|
| 1 | Port | Price | Deal No | CONTRACT | MTS Release | Status |
| 2 | ST KITTS | 663.000000 | 0020166117 | 0040228448 | 0000192047 | DELIVERED |
| 3 | ST KITTS | 617.000000 | 0020166212 | 0040228543 | 0000192171 | DELIVERED |
| 4 | HOUSTON | 215.000000 | 0020166238 | 0040228570 | 0000192200 | DELIVERED |
| 5 | ST EUSTATIUS | 503.000000 | 0020166242 | 0040228573 | 0000192206 | DELIVERED |
| 6 | ST MAARTEN | 475.000000 | 0020166326 | 0040228660 | 0000192314 | DELIVERED |
| 7 | BARBOURS CUT | 216.000000 | 0020166772 | 0040229095 | 0000192730 | DELIVERED |
| 8 | HOUSTON | 295.000000 | 0020166958 | 0040229279 | 0000192951 | DELIVERED |
| 9 | BOLIVAR ROADS | 302.000000 | 0020166981 | 0040229301 | 0000192975 | DELIVERED |
| 10 | BOLIVAR ROADS | 228.000000 | 0020167084 | 0040229411 | 0000193113 | DELIVERED |
| 11 | BAYPORT | 303.000000 | 0020167239 | 0040229566 | 0000193272 | DELIVERED |
| 12 | HOUSTON | 279.000000 | 0020167249 | 0040229573 | 0000193281 | DELIVERED |
| 13 | BARBOURS CUT | 272.000000 | 0020167267 | 0040229594 | 0000193312 | DELIVERED |
| 14 | HOUSTON | 274.000000 | 0020167274 | 0040229602 | 0000193322 | DELIVERED |
| 15 | BAYPORT | 460.000000 | 0020167468 | 0040229820 | 0000193628 | DELIVERED |
| 16 | HOUSTON | 312.000000 | 0020167480 | 0040229832 | 0000193642 | DELIVERED |
| 17 | HOUSTON | 329.000000 | 0020167583 | 0040229941 | 0000193783 | DELIVERED |
| 18 | GALVESTON | 589.000000 | 0020167783 | 0040230110 | 0000193888 | DELIVERED |
| 19 | BAYPORT | 483.000000 | 0020167891 | 0040230223 | 0000194030 | DELIVERED |
| 20 | BAYPORT | 363.790000 | 0020168237 | 0040230562 | 0000194348 | DELIVERED |
| 21 | BAYPORT | 397.990000 | 0020168238 | 0040230563 | 0000194349 | DELIVERED |
| 22 | GALVESTON | 640.000000 | 0020168858 | 0040231183 | 0000195045 | DELIVERED |
| 23 | GALVESTON | 640.000000 | 0020168859 | 0040231184 | 0000195046 | DELIVERED |
| 24 | BARBOURS CUT | 730.000000 | 0020169186 | 0040231607 | 0000195536 | DELIVERED |
| 25 | BOLIVAR ROADS | 640.000000 | 0020165858 | 0040228184 | 0000191724 | DELIVERED |
| 26 | BOLIVAR ROADS | 578.000000 | 0020165973 | 0040228295 | 0000191860 | DELIVERED |
| 27 | HOUSTON | 225.000000 | 0020166313 | 0040228643 | 0000192290 | DELIVERED |
| 28 | HOUSTON | 185.000000 | 0020166385 | 0040228716 | 0000192382 | DELIVERED |
| 29 | BOLIVAR ROADS | 140.000000 | 0020166442 | 0040228767 | 0000192442 | DELIVERED |
| 30 | HOUSTON | 154.000000 | 0020166443 | 0040228768 | 0000192444 | DELIVERED |
| 31 | GALVESTON | 170.000000 | 0020166475 | 0040228801 | 0000192490 | DELIVERED |
| 32 | HOUSTON | 229.000000 | 0020166532 | 0040228854 | 0000192510 | DELIVERED |
| 33 | HOUSTON | 220.000000 | 0020166547 | 0040228866 | 0000192523 | DELIVERED |
| 34 | HOUSTON | 267.000000 | 0020166740 | 0040229064 | 0000192696 | DELIVERED |
| 35 | BARBOURS CUT | 213.000000 | 0020166797 | 0040229118 | 0000192762 | DELIVERED |
| 36 | HOUSTON | 225.000000 | 0020166805 | 0040229126 | 0000192771 | DELIVERED |
| 37 | BOLIVAR ROADS | 286.000000 | 0020166879 | 0040229198 | 0000192858 | DELIVERED |
| 38 | BARBOURS CUT | 290.000000 | 0020166964 | 0040229286 | 0000192958 | DELIVERED |
| 39 | BOLIVAR ROADS | 380.000000 | 0020167001 | 0040229321 | 0000192995 | DELIVERED |
| 40 | BARBOURS CUT | 325.000000 | 0020167230 | 0040229562 | 0000193267 | DELIVERED |
| 41 | BAYPORT | 270.000000 | 0020167232 | 0040229556 | 0000193261 | DELIVERED |
| 42 | BAYPORT | 260.000000 | 0020167291 | 0040229623 | 0000193365 | DELIVERED |
| 43 | HOUSTON | 295.000000 | 0020167350 | 0040229691 | 0000193454 | DELIVERED |
| 44 | HOUSTON | 349.000000 | 0020167381 | 0040229718 | 0000193498 | DELIVERED |
| 45 | BOLIVAR ROADS | 447.000000 | 0020167393 | 0040229729 | 0000193512 | DELIVERED |
| 46 | BARBOURS CUT | 349.000000 | 0020167397 | 0040229736 | 0000193522 | DELIVERED |
| 47 | BARBOURS CUT | 409.500000 | 0020167466 | 0040229817 | 0000193625 | DELIVERED |
| 48 | BAYPORT | 328.000000 | 0020167475 | 0040229826 | 0000193634 | DELIVERED |
| 49 | BARBOURS CUT | 421.000000 | 0020167476 | 0040229825 | 0000193633 | DELIVERED |

| | P | Q | R | S | T | U |
|---|---|---|---|---|---|---|
| 1 | Delivery Date | Invoice | Invoice Qty | Invoice Date | Price UOM | Deal Item No |
| 2 | 03/05/2020 | 0090531962 | 149.863 | 20200311 | MT | 000010 |
| 3 | 03/14/2020 | 0090532620 | 99.818 | 20200326 | MT | 000010 |
| 4 | 04/06/2020 | 0090534360 | 881.260 | 20200513 | MT | 000010 |
| 5 | 03/15/2020 | 0090532444 | 349.905 | 20200319 | MT | 000010 |
| 6 | 03/31/2020 | 0090532828 | 100.112 | 20200401 | MT | 000010 |
| 7 | 07/07/2020 | 0090536223 | 1,100.520 | 20200710 | MT | 000010 |
| 8 | 08/24/2020 | 0090538129 | 706.480 | 20200824 | MT | 000010 |
| 9 | 09/09/2020 | 0090538605 | 850.200 | 20200911 | MT | 000010 |
| 10 | 10/04/2020 | 0090539330 | 1,450.040 | 20201012 | MT | 000010 |
| 11 | 11/02/2020 | 0090540156 | 2,446.650 | 20201109 | MT | 000010 |
| 12 | 10/28/2020 | 0090539910 | 280.090 | 20201030 | MT | 000010 |
| 13 | 11/10/2020 | 0090540333 | 300.470 | 20201113 | MT | 000010 |
| 14 | 11/08/2020 | 0090540330 | 860.610 | 20201113 | MT | 000010 |
| 15 | 01/16/2021 | 0090542006 | 650.600 | 20210120 | MT | 000010 |
| 16 | 01/27/2021 | 0090542165 | 1,000.860 | 20210127 | MT | 000010 |
| 17 | 03/03/2021 | 0090543222 | 800.880 | 20210308 | MT | 000010 |
| 18 | 03/10/2021 | 0090543334 | 402.240 | 20210310 | MT | 000010 |
| 19 | 04/15/2021 | 0090544155 | 2,500.320 | 20210416 | MT | 000010 |
| 20 | 07/30/2021 | 0090546908 | 1,700.450 | 20210802 | MT | 000010 |
| 21 | 08/04/2021 | 0090547057 | 2,600.840 | 20210809 | MT | 000010 |
| 22 | 12/03/2021 | 0090550059 | 580.500 | 20211210 | MT | 000010 |
| 23 | 12/07/2021 | 0090550096 | 578.590 | 20211213 | MT | 000010 |
| 24 | 03/12/2022 | 0090552007 | 310.860 | 20220315 | MT | 000010 |
| 25 | 01/12/2020 | 0090529819 | 374.990 | 20200115 | MT | 000010 |
| 26 | 02/06/2020 | 0090530816 | 190.900 | 20200211 | MT | 000010 |
| 27 | 03/25/2020 | 0090532641 | 420.000 | 20200326 | MT | 000010 |
| 28 | 04/14/2020 | 0090534362 | 260.490 | 20200513 | MT | 000010 |
| 29 | 04/25/2020 | 0090533761 | 599.910 | 20200427 | MT | 000010 |
| 30 | 05/10/2020 | 0090534293 | 910.600 | 20200511 | MT | 000010 |
| 31 | 05/06/2020 | 0090534247 | 250.200 | 20200511 | MT | 000010 |
| 32 | 05/23/2020 | 0090534831 | 130.380 | 20200526 | MT | 000010 |
| 33 | 05/10/2020 | 0090534290 | 90.290 | 20200511 | MT | 000010 |
| 34 | 06/21/2020 | 0090535742 | 290.510 | 20200623 | MT | 000010 |
| 35 | 07/12/2020 | 0090536396 | 400.320 | 20200715 | MT | 000010 |
| 36 | 07/15/2020 | 0090537022 | 1,250.020 | 20200720 | MT | 000010 |
| 37 | 08/05/2020 | 0090537731 | 600.940 | 20200812 | MT | 000010 |
| 38 | 09/02/2020 | 0090538448 | 830.400 | 20200909 | MT | 000010 |
| 39 | 08/31/2020 | 0090538298 | 100.310 | 20200901 | MT | 000010 |
| 40 | 10/29/2020 | 0090539911 | 3,250.120 | 20201030 | MT | 000010 |
| 41 | 10/27/2020 | 0090539873 | 500.430 | 20201028 | MT | 000010 |
| 42 | 11/18/2020 | 0090540604 | 2,699.740 | 20201125 | MT | 000010 |
| 43 | 12/05/2020 | 0090541265 | 189.920 | 20201218 | MT | 000010 |
| 44 | 12/13/2020 | 0090541149 | 600.480 | 20201218 | MT | 000010 |
| 45 | 12/20/2020 | 0090541341 | 1,100.550 | 20201223 | MT | 000010 |
| 46 | 12/19/2020 | 0090541331 | 300.360 | 20201223 | MT | 000010 |
| 47 | 01/12/2021 | 0090541909 | 2,500.210 | 20210114 | MT | 000010 |
| 48 | 01/12/2021 | 0090541838 | 2,500.530 | 20210113 | MT | 000010 |
| 49 | 01/16/2021 | 0090542072 | 3,200.350 | 20210120 | MT | 000010 |

|  | V | W | X | Y |
|---|---|---|---|---|
| 1 | Pricing Method | Admin Approval | Credit Approval | Credit Approval By |
| 2 | FX | APPROVED | APPROVED | L41260 |
| 3 | FX | APPROVED | APPROVED | L41260 |
| 4 | FX | APPROVED | APPROVED | L41260 |
| 5 | FX | APPROVED | APPROVED | L41260 |
| 6 | FX | APPROVED | APPROVED | L41260 |
| 7 | FX | APPROVED | APPROVED | L41260 |
| 8 | FX | APPROVED | APPROVED | L41260 |
| 9 | FX | APPROVED | APPROVED | SOTOGE |
| 10 | FX | APPROVED | APPROVED | L41260 |
| 11 | FX | APPROVED | APPROVED | L41260 |
| 12 | FX | APPROVED | APPROVED | FLORESV |
| 13 | FX | APPROVED | APPROVED | L41260 |
| 14 | FX | APPROVED | APPROVED | L41260 |
| 15 | FX | APPROVED | APPROVED | L41260 |
| 16 | FX | APPROVED | APPROVED | SOTOGE |
| 17 | FX | APPROVED | APPROVED | L41260 |
| 18 | FX | APPROVED | APPROVED | SOTOGE |
| 19 | FX | APPROVED | APPROVED | L41260 |
| 20 | FX | APPROVED | APPROVED | SOTOGE |
| 21 | FM | APPROVED | APPROVED | L41260 |
| 22 | FX | APPROVED | APPROVED | SOTOGE |
| 23 | FX | APPROVED | APPROVED | SOTOGE |
| 24 | FX | APPROVED | APPROVED | SOTOGE |
| 25 | FX | APPROVED | APPROVED | L41260 |
| 26 | FX | APPROVED | APPROVED | L41260 |
| 27 | FX | APPROVED | APPROVED | L41260 |
| 28 | FX | APPROVED | APPROVED | L41260 |
| 29 | FX | APPROVED | APPROVED | L41260 |
| 30 | FX | APPROVED | APPROVED | L41260 |
| 31 | FX | APPROVED | APPROVED | L41260 |
| 32 | FX | APPROVED | APPROVED | L41260 |
| 33 | FX | APPROVED | APPROVED | L41260 |
| 34 | FX | APPROVED | APPROVED | L41260 |
| 35 | FX | APPROVED | APPROVED | L41260 |
| 36 | FX | APPROVED | APPROVED | L41260 |
| 37 | FX | APPROVED | APPROVED | L41260 |
| 38 | FX | APPROVED | APPROVED | L41260 |
| 39 | FX | APPROVED | APPROVED | L41260 |
| 40 | FX | APPROVED | APPROVED | L41260 |
| 41 | FX | APPROVED | APPROVED | L41260 |
| 42 | FX | APPROVED | APPROVED | L41260 |
| 43 | FX | APPROVED | APPROVED | L41260 |
| 44 | FX | APPROVED | APPROVED | L41260 |
| 45 | FX | APPROVED | APPROVED | SOTOGE |
| 46 | FX | APPROVED | APPROVED | L41260 |
| 47 | FX | APPROVED | APPROVED | SOTOGE |
| 48 | FX | APPROVED | APPROVED | SOTOGE |
| 49 | FX | APPROVED | APPROVED | SOTOGE |

| | Z | AA | AB | AC | AD |
|---|---|---|---|---|---|
| 1 | Broker | Bulk Sales | Trader | | |
| 2 | | | 0000002634 | Jason Welch | |
| 3 | | | 0000002634 | Jason Welch | |
| 4 | | | 0000002634 | Jason Welch | |
| 5 | | | 0000002634 | Jason Welch | |
| 6 | | | 0000002634 | Jason Welch | |
| 7 | | | 0000030246 | Andy Downs | |
| 8 | | | 0000030246 | Andy Downs | |
| 9 | | | 0000030246 | Andy Downs | |
| 10 | | | 0000030246 | Andy Downs | |
| 11 | | | 0000030246 | Andy Downs | |
| 12 | | | 0000030246 | Andy Downs | |
| 13 | | | 0000030246 | Andy Downs | |
| 14 | | | 0000030246 | Andy Downs | |
| 15 | | | 0000030246 | Andy Downs | |
| 16 | | | 0000030246 | Andy Downs | |
| 17 | | | 0000030246 | Andy Downs | |
| 18 | | | 0000030246 | Andy Downs | |
| 19 | | | 0000030246 | Andy Downs | |
| 20 | | | 0000030246 | Andy Downs | |
| 21 | | | 0000030246 | Andy Downs | |
| 22 | | | 0000030246 | Andy Downs | |
| 23 | | | 0000030246 | Andy Downs | |
| 24 | | | 0000030246 | Andy Downs | |
| 25 | | | 0000031536 | Jade Irvine | |
| 26 | | | 0000031536 | Jade Irvine | |
| 27 | | | 0000033283 | Erik Neunhoffer | |
| 28 | | | 0000033283 | Erik Neunhoffer | |
| 29 | | | 0000033283 | Erik Neunhoffer | |
| 30 | | | 0000033283 | Erik Neunhoffer | |
| 31 | | | 0000033283 | Erik Neunhoffer | |
| 32 | | | 0000033283 | Erik Neunhoffer | |
| 33 | | | 0000033283 | Erik Neunhoffer | |
| 34 | | | 0000033283 | Erik Neunhoffer | |
| 35 | | | 0000033283 | Erik Neunhoffer | |
| 36 | | | 0000033283 | Erik Neunhoffer | |
| 37 | | | 0000033283 | Erik Neunhoffer | |
| 38 | | | 0000033283 | Erik Neunhoffer | |
| 39 | | | 0000033283 | Erik Neunhoffer | |
| 40 | | | 0000033283 | Erik Neunhoffer | |
| 41 | | | 0000033283 | Erik Neunhoffer | |
| 42 | | | 0000033283 | Erik Neunhoffer | |
| 43 | | | 0000033283 | Erik Neunhoffer | |
| 44 | | | 0000033283 | Erik Neunhoffer | |
| 45 | | | 0000033283 | Erik Neunhoffer | |
| 46 | | | 0000033283 | Erik Neunhoffer | |
| 47 | | | 0000033283 | Erik Neunhoffer | |
| 48 | | | 0000033283 | Erik Neunhoffer | |
| 49 | | | 0000033283 | Erik Neunhoffer | |

|    | A | B | C | D | E |
|----|---|---|---|---|---|
| 1  | Create Date | Nomination Date | ETA Valid From | ETA Valid To | Sold To |
| 50 | 02/23/2021 | 02/23/2021 | 03/08/2021 | 00/00/0000 | 0000109732 |
| 51 | 03/16/2021 | 03/16/2021 | 03/20/2021 | 03/20/2021 | 0000109732 |
| 52 | 03/17/2021 | 03/17/2021 | 03/25/2021 | 03/25/2021 | 0000109732 |
| 53 | 03/25/2021 | 03/25/2021 | 04/08/2021 | 00/00/0000 | 0000109732 |
| 54 | 03/29/2021 | 03/29/2021 | 04/06/2021 | 00/00/0000 | 0000109732 |
| 55 | 03/29/2021 | 03/29/2021 | 04/04/2021 | 00/00/0000 | 0000109732 |
| 56 | 04/20/2021 | 04/20/2021 | 04/24/2021 | 00/00/0000 | 0000109732 |
| 57 | 04/29/2021 | 04/29/2021 | 05/12/2021 | 00/00/0000 | 0000109732 |
| 58 | 04/29/2021 | 04/29/2021 | 05/07/2021 | 00/00/0000 | 0000109732 |
| 59 | 05/03/2021 | 05/03/2021 | 05/15/2021 | 00/00/0000 | 0000109732 |
| 60 | 05/06/2021 | 05/06/2021 | 05/19/2021 | 05/19/2021 | 0000109732 |
| 61 | 05/11/2021 | 05/11/2021 | 05/16/2021 | 05/16/2021 | 0000109732 |
| 62 | 05/28/2021 | 05/28/2021 | 06/03/2021 | 00/00/0000 | 0000109732 |
| 63 | 06/07/2021 | 06/07/2021 | 06/08/2021 | 00/00/0000 | 0000109732 |
| 64 | 07/27/2021 | 07/27/2021 | 08/02/2021 | 08/02/2021 | 0000109732 |
| 65 | 08/05/2021 | 08/05/2021 | 08/18/2021 | 00/00/0000 | 0000109732 |
| 66 | 08/12/2021 | 08/12/2021 | 08/19/2021 | 08/19/2021 | 0000109732 |
| 67 | 09/06/2021 | 09/06/2021 | 09/10/2021 | 00/00/0000 | 0000109732 |
| 68 | 09/09/2021 | 09/09/2021 | 09/15/2021 | 09/15/2021 | 0000109732 |
| 69 | 09/13/2021 | 09/13/2021 | 09/24/2021 | 09/24/2021 | 0000109732 |
| 70 | 10/11/2021 | 10/11/2021 | 10/19/2021 | 00/00/0000 | 0000109732 |
| 71 | 10/26/2021 | 10/26/2021 | 11/04/2021 | 00/00/0000 | 0000109732 |
| 72 | 10/27/2021 | 10/06/2021 | 10/16/2021 | 10/16/2021 | 0000109732 |
| 73 | 10/29/2021 | 10/29/2021 | 10/30/2021 | 00/00/0000 | 0000109732 |
| 74 | 11/10/2021 | 11/10/2021 | 11/30/2021 | 11/30/2021 | 0000109732 |
| 75 | 11/19/2021 | 11/18/2021 | 11/27/2021 | 00/00/0000 | 0000109732 |
| 76 | 11/30/2021 | 11/30/2021 | 12/07/2021 | 12/07/2021 | 0000109732 |
| 77 | 12/01/2021 | 12/01/2021 | 12/06/2021 | 12/06/2021 | 0000109732 |
| 78 | 12/31/2021 | 12/31/2021 | 01/16/2022 | 00/00/0000 | 0000109732 |
| 79 | 01/10/2022 | 01/10/2022 | 01/18/2022 | 00/00/0000 | 0000109732 |
| 80 | 01/17/2022 | 01/17/2022 | 01/28/2022 | 01/28/2022 | 0000109732 |
| 81 | 02/23/2022 | 02/17/2022 | 02/24/2022 | 00/00/0000 | 0000109732 |
| 82 | 02/25/2022 | 02/25/2022 | 03/03/2022 | 03/03/2022 | 0000109732 |
| 83 | 03/08/2022 | 03/08/2022 | 03/17/2022 | 00/00/0000 | 0000109732 |
| 84 | 03/08/2022 | 03/08/2022 | 03/16/2022 | 03/16/2022 | 0000109732 |

|  | F | G | H | I |
|---|---|---|---|---|
| 1 | Sold To Name | Vessel | Material | Qty |
| 50 | GLANDER INTERNATIONAL BUNKERING INC | APL OREGON | IFO380 0.5 | 1,900.700 |
| 51 | GLANDER INTERNATIONAL BUNKERING INC | ST.LOUIS EXPRESS | IFO380 0.5 | 450.050 |
| 52 | GLANDER INTERNATIONAL BUNKERING INC | CHACABUCO | MGO-DMA | 280.460 |
| 53 | GLANDER INTERNATIONAL BUNKERING INC | CMA CGM NERVAL | IFO380 0.5 | 750.540 |
| 54 | GLANDER INTERNATIONAL BUNKERING INC | AS CLEOPATRA | IFO380 0.5 | 500.540 |
| 55 | GLANDER INTERNATIONAL BUNKERING INC | MSC VANESSA | IFO380 0.5 | 2,000.360 |
| 56 | GLANDER INTERNATIONAL BUNKERING INC | CLIPPER ENYO | IFO380 | 740.220 |
| 57 | GLANDER INTERNATIONAL BUNKERING INC | ZIM SHENZHEN | IFO380 | 2,999.690 |
| 58 | GLANDER INTERNATIONAL BUNKERING INC | MAIRA | IFO380 0.5 | 400.760 |
| 59 | GLANDER INTERNATIONAL BUNKERING INC | NAVARINO | IFO380 0.5 | 3,502.080 |
| 60 | GLANDER INTERNATIONAL BUNKERING INC | ARKADIA | IFO380 0.5 | 450.190 |
| 61 | GLANDER INTERNATIONAL BUNKERING INC | GASCHEM CARIBIC | IFO380 0.5 | 660.280 |
| 62 | GLANDER INTERNATIONAL BUNKERING INC | EUROPE | IFO380 | 856.220 |
| 63 | GLANDER INTERNATIONAL BUNKERING INC | AQUADISIAC | IFO380 0.5 | 400.330 |
| 64 | GLANDER INTERNATIONAL BUNKERING INC | ONEGO TRADER | IFO380 0.5 | 180.040 |
| 65 | GLANDER INTERNATIONAL BUNKERING INC | NORTHERN JUVENILE | MGO-DMA | 300.390 |
| 66 | GLANDER INTERNATIONAL BUNKERING INC | MINVERVA | IFO380 0.5 | 480.200 |
| 67 | GLANDER INTERNATIONAL BUNKERING INC | RIO GRANDE EXPRESS | IFO380 0.5 | 600.110 |
| 68 | GLANDER INTERNATIONAL BUNKERING INC | ARTEMIS ANGLER | MGO-DMA | 118.130 |
| 69 | GLANDER INTERNATIONAL BUNKERING INC | SULPHUR ENTERPRISE | MGO-DMA | 659.280 |
| 70 | GLANDER INTERNATIONAL BUNKERING INC | ARTEMIS ANGLER | MGO-DMA | 294.080 |
| 71 | GLANDER INTERNATIONAL BUNKERING INC | MSC LORETTA | IFO380 | 1,500.390 |
| 72 | GLANDER INTERNATIONAL BUNKERING INC | MAIRA | IFO380 0.5 | 500.090 |
| 73 | GLANDER INTERNATIONAL BUNKERING INC | CLEAROCEAN MAGIC | MGO-DMA | 90.520 |
| 74 | GLANDER INTERNATIONAL BUNKERING INC | LILA PIRAEUS | IFO380 0.5 | 110.190 |
| 75 | GLANDER INTERNATIONAL BUNKERING INC | MH HAMBURG | IFO380 | 2,800.430 |
| 76 | GLANDER INTERNATIONAL BUNKERING INC | PROGAS ODYSSEY | MGO-DMA | 450.350 |
| 77 | GLANDER INTERNATIONAL BUNKERING INC | AOM FEDERICA | IFO380 | 900.060 |
| 78 | GLANDER INTERNATIONAL BUNKERING INC | BRUSSELS | IFO380 0.5 | 400.660 |
| 79 | GLANDER INTERNATIONAL BUNKERING INC | INDEPENDENCE | MGO-DMA | 500.160 |
| 80 | GLANDER INTERNATIONAL BUNKERING INC | CLIPPER ENYO | IFO380 | 850.610 |
| 81 | GLANDER INTERNATIONAL BUNKERING INC | SCF PRIMORYE | IFO380 0.5 | 799.940 |
| 82 | GLANDER INTERNATIONAL BUNKERING INC | ECO DESTINY | IFO380 0.5 | 650.480 |
| 83 | GLANDER INTERNATIONAL BUNKERING INC | MINVERVA | IFO380 0.5 | 770.390 |
| 84 | GLANDER INTERNATIONAL BUNKERING INC | TUCAPEL | IFO380 0.5 | 508.610 |

| | J | K | L | M | N | O |
|---|---|---|---|---|---|---|
| 1 | Port | Price | Deal No | CONTRACT | MTS Release | Status |
| 50 | BAYPORT | 485.000000 | 0020167751 | 0040230075 | 0000193843 | DELIVERED |
| 51 | BARBOURS CUT | 526.000000 | 0020167812 | 0040230139 | 0000193923 | DELIVERED |
| 52 | BARBOURS CUT | 570.000000 | 0020167814 | 0040230141 | 0000193928 | DELIVERED |
| 53 | BAYPORT | 455.000000 | 0020167841 | 0040230170 | 0000193967 | DELIVERED |
| 54 | BARBOURS CUT | 492.000000 | 0020167857 | 0040230183 | 0000193983 | DELIVERED |
| 55 | BAYPORT | 492.000000 | 0020167858 | 0040230184 | 0000193984 | DELIVERED |
| 56 | BOLIVAR ROADS | 384.000000 | 0020167932 | 0040230264 | 0000194077 | DELIVERED |
| 57 | BAYPORT | 382.500000 | 0020167962 | 0040230295 | 0000194116 | DELIVERED |
| 58 | BARBOURS CUT | 500.000000 | 0020167966 | 0040230298 | 0000194119 | DELIVERED |
| 59 | BAYPORT | 495.000000 | 0020167980 | 0040230313 | 0000194136 | DELIVERED |
| 60 | BARBOURS CUT | 507.000000 | 0020167994 | 0040230325 | 0000194152 | DELIVERED |
| 61 | BOLIVAR ROADS | 474.000000 | 0020168007 | 0040230338 | 0000194169 | DELIVERED |
| 62 | BAYPORT | 398.000000 | 0020168173 | 0040230493 | 0000194259 | DELIVERED |
| 63 | BOLIVAR ROADS | 485.000000 | 0020168188 | 0040230508 | 0000194280 | DELIVERED |
| 64 | HOUSTON | 483.000000 | 0020168336 | 0040230660 | 0000194463 | DELIVERED |
| 65 | BAYPORT | 592.000000 | 0020168370 | 0040230694 | 0000194510 | DELIVERED |
| 66 | BARBOURS CUT | 521.000000 | 0020168395 | 0040230720 | 0000194537 | DELIVERED |
| 67 | BARBOURS CUT | 530.000000 | 0020168464 | 0040230788 | 0000194627 | DELIVERED |
| 68 | GALVESTON | 635.000000 | 0020168479 | 0040230801 | 0000194640 | DELIVERED |
| 69 | GALVESTON | 635.000000 | 0020168489 | 0040230813 | 0000194652 | DELIVERED |
| 70 | GALVESTON | 750.000000 | 0020168669 | 0040231001 | 0000194799 | DELIVERED |
| 71 | BAYPORT | 500.000000 | 0020168710 | 0040231048 | 0000194874 | DELIVERED |
| 72 | BARBOURS CUT | 583.000000 | 0020168720 | 0040231057 | 0000194875 | DELIVERED |
| 73 | HOUSTON | 750.000000 | 0020168727 | 0040231064 | 0000194886 | DELIVERED |
| 74 | HOUSTON | 570.000000 | 0020168768 | 0040231104 | 0000194944 | DELIVERED |
| 75 | BARBOURS CUT | 453.000000 | 0020168794 | 0040231136 | 0000194989 | DELIVERED |
| 76 | BOLIVAR ROADS | 602.000000 | 0020168854 | 0040231178 | 0000195040 | DELIVERED |
| 77 | BAYPORT | 386.000000 | 0020168862 | 0040231187 | 0000195049 | DELIVERED |
| 78 | BAYPORT | 598.000000 | 0020168966 | 0040231300 | 0000195229 | DELIVERED |
| 79 | HOUSTON | 765.000000 | 0020168994 | 0040231330 | 0000195267 | DELIVERED |
| 80 | HOUSTON | 503.000000 | 0020169014 | 0040231350 | 0000195295 | DELIVERED |
| 81 | BOLIVAR ROADS | 683.000000 | 0020169133 | 0040231553 | 0000195459 | DELIVERED |
| 82 | HOUSTON | 747.000000 | 0020169141 | 0040231564 | 0000195478 | DELIVERED |
| 83 | BARBOURS CUT | 1,002.000000 | 0020169172 | 0040231592 | 0000195514 | DELIVERED |
| 84 | BARBOURS CUT | 1,012.000000 | 0020169175 | 0040231595 | 0000195517 | DELIVERED |

| | P | Q | R | S | T | U |
|---|---|---|---|---|---|---|
| 1 | Delivery Date | Invoice | Invoice Qty | Invoice Date | Price UOM | Deal Item No |
| 50 | 03/08/2021 | 0090543322 | 1,900.700 | 20210310 | MT | 000010 |
| 51 | 03/20/2021 | 0090543589 | 450.050 | 20210323 | MT | 000010 |
| 52 | 03/25/2021 | 0090544470 | 280.460 | 20210427 | MT | 000010 |
| 53 | 04/08/2021 | 0090543971 | 750.540 | 20210409 | MT | 000010 |
| 54 | 04/06/2021 | 0090543964 | 500.540 | 20210409 | MT | 000010 |
| 55 | 04/04/2021 | 0090543957 | 2,000.360 | 20210409 | MT | 000010 |
| 56 | 04/24/2021 | 0090544438 | 740.220 | 20210426 | MT | 000010 |
| 57 | 05/12/2021 | 0090544918 | 2,999.690 | 20210512 | MT | 000010 |
| 58 | 05/07/2021 | 0090544852 | 400.760 | 20210511 | MT | 000010 |
| 59 | 05/15/2021 | 0090545126 | 3,502.080 | 20210519 | MT | 000010 |
| 60 | 05/19/2021 | 0090545142 | 450.190 | 20210520 | MT | 000010 |
| 61 | 05/16/2021 | 0090545102 | 660.280 | 20210518 | MT | 000010 |
| 62 | 06/03/2021 | 0090545614 | 856.220 | 20210609 | MT | 000010 |
| 63 | 06/08/2021 | 0090545640 | 400.330 | 20210609 | MT | 000010 |
| 64 | 08/02/2021 | 0090547055 | 180.040 | 20210809 | MT | 000010 |
| 65 | 08/18/2021 | 0090547408 | 300.390 | 20210819 | MT | 000010 |
| 66 | 08/19/2021 | 0090547545 | 480.200 | 20210830 | MT | 000010 |
| 67 | 09/10/2021 | 0090547885 | 600.110 | 20210914 | MT | 000010 |
| 68 | 09/15/2021 | 0090547990 | 118.130 | 20210916 | MT | 000010 |
| 69 | 09/24/2021 | 0090548322 | 659.280 | 20210927 | MT | 000010 |
| 70 | 10/19/2021 | 0090548975 | 294.080 | 20211022 | MT | 000010 |
| 71 | 11/04/2021 | 0090549317 | 1,500.390 | 20211109 | MT | 000010 |
| 72 | 10/16/2021 | 0090549077 | 500.090 | 20211028 | MT | 000010 |
| 73 | 10/30/2021 | 0090549171 | 90.520 | 20211102 | MT | 000010 |
| 74 | 11/30/2021 | 0090549837 | 110.190 | 20211201 | MT | 000010 |
| 75 | 11/27/2021 | 0090549834 | 2,800.430 | 20211130 | MT | 000010 |
| 76 | 12/07/2021 | 0090550093 | 450.350 | 20211213 | MT | 000010 |
| 77 | 12/06/2021 | 0090550091 | 900.060 | 20211213 | MT | 000010 |
| 78 | 01/16/2022 | 0090550951 | 400.660 | 20220119 | MT | 000010 |
| 79 | 01/18/2022 | 0090550972 | 500.160 | 20220120 | MT | 000010 |
| 80 | 01/28/2022 | 0090551153 | 850.610 | 20220131 | MT | 000010 |
| 81 | 02/24/2022 | 0090551658 | 799.940 | 20220225 | MT | 000010 |
| 82 | 03/03/2022 | 0090551875 | 650.480 | 20220309 | MT | 000010 |
| 83 | 03/17/2022 | 0090552143 | 770.390 | 20220322 | MT | 000010 |
| 84 | 03/16/2022 | 0090552140 | 508.610 | 20220322 | MT | 000010 |

|    | V | W | X | Y |
|----|---|---|---|---|
| 1  | Pricing Method | Admin Approval | Credit Approval | Credit Approval By |
| 50 | FX | APPROVED | APPROVED | SOTOGE |
| 51 | FX | APPROVED | APPROVED | SOTOGE |
| 52 | FX | APPROVED | APPROVED | L41260 |
| 53 | FX | APPROVED | APPROVED | L41260 |
| 54 | FX | APPROVED | APPROVED | L41260 |
| 55 | FX | APPROVED | APPROVED | L41260 |
| 56 | FX | APPROVED | APPROVED | L41260 |
| 57 | FX | APPROVED | APPROVED | L41260 |
| 58 | FX | APPROVED | APPROVED | L41260 |
| 59 | FX | APPROVED | APPROVED | L41260 |
| 60 | FX | APPROVED | APPROVED | FLORESV |
| 61 | FX | APPROVED | APPROVED | L41260 |
| 62 | FX | APPROVED | APPROVED | FLORESV |
| 63 | FX | APPROVED | APPROVED | SOTOGE |
| 64 | FX | APPROVED | APPROVED | L41260 |
| 65 | FX | APPROVED | APPROVED | L41260 |
| 66 | FX | APPROVED | APPROVED | L41260 |
| 67 | FX | APPROVED | APPROVED | L41260 |
| 68 | FX | APPROVED | APPROVED | L41260 |
| 69 | FX | APPROVED | APPROVED | L41260 |
| 70 | FX | APPROVED | APPROVED | L41260 |
| 71 | FX | APPROVED | APPROVED | L41260 |
| 72 | FX | APPROVED | APPROVED | L41260 |
| 73 | FX | APPROVED | APPROVED | L41260 |
| 74 | FX | APPROVED | APPROVED | L41260 |
| 75 | FX | APPROVED | APPROVED | SOTOGE |
| 76 | FX | APPROVED | APPROVED | SOTOGE |
| 77 | FX | APPROVED | APPROVED | L41260 |
| 78 | FX | APPROVED | APPROVED | SOTOGE |
| 79 | FX | APPROVED | APPROVED | L41260 |
| 80 | FX | APPROVED | APPROVED | L41260 |
| 81 | FX | APPROVED | APPROVED | SOTOGE |
| 82 | FX | APPROVED | APPROVED | L41260 |
| 83 | FX | APPROVED | APPROVED | SOTOGE |
| 84 | FX | APPROVED | APPROVED | SOTOGE |

| | Z | AA | AB | AC | AD |
|---|---|---|---|---|---|
| 1 | Broker | Bulk Sales | Trader | | |
| 50 | | | 0000033283 | Erik Neunhoffer | |
| 51 | | | 0000033283 | Erik Neunhoffer | |
| 52 | | | 0000033283 | Erik Neunhoffer | |
| 53 | | | 0000033283 | Erik Neunhoffer | |
| 54 | | | 0000033283 | Erik Neunhoffer | |
| 55 | | | 0000033283 | Erik Neunhoffer | |
| 56 | | | 0000033283 | Erik Neunhoffer | |
| 57 | | | 0000033283 | Erik Neunhoffer | |
| 58 | | | 0000033283 | Erik Neunhoffer | |
| 59 | | | 0000033283 | Erik Neunhoffer | |
| 60 | | | 0000033283 | Erik Neunhoffer | |
| 61 | | | 0000033283 | Erik Neunhoffer | |
| 62 | | | 0000033283 | Erik Neunhoffer | |
| 63 | | | 0000033283 | Erik Neunhoffer | |
| 64 | | | 0000033283 | Erik Neunhoffer | |
| 65 | | | 0000033283 | Erik Neunhoffer | |
| 66 | | | 0000033283 | Erik Neunhoffer | |
| 67 | | | 0000033283 | Erik Neunhoffer | |
| 68 | | | 0000033283 | Erik Neunhoffer | |
| 69 | | | 0000033283 | Erik Neunhoffer | |
| 70 | | | 0000033283 | Erik Neunhoffer | |
| 71 | | | 0000033283 | Erik Neunhoffer | |
| 72 | | | 0000033283 | Erik Neunhoffer | |
| 73 | | | 0000033283 | Erik Neunhoffer | |
| 74 | | | 0000033283 | Erik Neunhoffer | |
| 75 | | | 0000033283 | Erik Neunhoffer | |
| 76 | | | 0000033283 | Erik Neunhoffer | |
| 77 | | | 0000033283 | Erik Neunhoffer | |
| 78 | | | 0000033283 | Erik Neunhoffer | |
| 79 | | | 0000033283 | Erik Neunhoffer | |
| 80 | | | 0000033283 | Erik Neunhoffer | |
| 81 | | | 0000033283 | Erik Neunhoffer | |
| 82 | | | 0000033283 | Erik Neunhoffer | |
| 83 | | | 0000033283 | Erik Neunhoffer | |
| 84 | | | 0000033283 | Erik Neunhoffer | |