UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **GLANDER INTERNATIONAL BUNKERING, INC.** § § § §<br>　　*Plaintiff*, § §<br>V. § §<br>**NUSTAR ENERGY SERVICES, INC.** § §<br>　　*Defendant*. § | | **C.A. NO. 3:23-cv-00071**<br>**IN ADMIRALTY, Rule 9(h)** |

**PLAINTIFF GLANDER INTERNATIONAL BUNKERING, INC.'S RESPONSE
IN OPPOSITION TO NUSTAR ENERGY SERVICES, INC.'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

TO THE HONORABLE COURT:

**COMES NOW**, Plaintiff Glander International Bunkering, Inc. ("Glander"), by and through its undersigned counsel, and submits this opposition to NuStar Energy Services, Inc.'s ("NuStar") Motion for Partial Summary Judgment (Doc. 9) and Cross Motion Pursuant to F<small>ED</small>. R. C<small>IV</small>. P. 56(d), and would respectfully show as follows:

**I.
<u>S<small>UMMARY OF</small> A<small>RGUMENT</small></u>**

This matter involves Glander's claims for breach of contract, breach of warranties, misrepresentation, and negligence deriving from NuStar's failure to provide on-spec, conforming bunker fuel to the M/V CLIPPER ENYO (the "Vessel") as required by the Sales Agreement.

It is respectfully submitted that while the discovery cut-off has expired, the parties have agreed to an extension of the discovery period. As such, Glander seeks to depose Erik Neunhoffer, who provided an unsworn declaration in support of NuStar's Motion for

Partial Summary Judgment. Discussions regarding scheduling are underway, but Glander expects to be able to depose Mr. Neunhoffer in July. As such, Glander respectfully requests that the Court grant Glander's cross-motion pursuant to Rule 56(d) to permit the supplementation of Glander's opposition once discovery has been completed.

In addition, there are multiple genuine issues of material fact in dispute surrounding NuStar's supply of the off-spec, non-conforming bunkers to the Vessel, such that summary judgment is unavailable. First, the bunkers in question deviated so completely from the bargained for quality that it constitutes a breach of the Sales Contract such that Glander was deprived of its benefit of the bargain and NuStar should not be entitled to rely upon its Terms & Conditions which seek to exclude various warranties and limit liability. Secondly, the instruments utilized by NuStar in supplying the bunkers to the Vessel are in conflict and as such, a material fact exists as to whether the warranties of merchantability and fitness for a particular purpose have been excluded. Accordingly, Glander files this opposition to NuStar's motion for partial summary judgment.

## II.
## PROCEDURAL BACKGROUND

Glander filed this lawsuit against NuStar on March 3, 2023, alleging that NuStar delivered bunker fuel that failed to comply with the contractual quality specifications. Doc. 1. On April 5, 2023, NuStar filed an answer denying and disclaiming all liability and raising additional defenses. Doc. 3. NuStar filed its Motion for Partial Summary Judgment against Plaintiff on May 2, 2024. Doc. 9. Thereafter, the parties agreed to an extension for Glander to respond, which Glander filed as its Unopposed Motion for Extension of Time to Respond

to NuStar Energy Services, Inc.'s Motion for Partial Summary Judgment, and extending the response deadline to June 3, 2024. Doc. 10.

## III.
### FACTUAL BACKGROUND

The present case arises from NuStar's delivery of contaminated, non-conforming, and off-specification bunker fuel (hereafter "bad bunker fuel"), unfit for the intended use to the M/V CLIPPER ENYO (the "Vessel"), on January 27, 2022 at the Targa terminal in Houston, Texas. Glander, as buyer, entered into a sales contract with NuStar, as seller, by which NuStar agreed to supply bunker fuel to the Vessel. *See* **Exhibit 1**. Thereafter, a Marine Fuel Delivery Note was issued memorializing the delivery of 850 metric tons of this bad bunker fuel to the Vessel. *See* **Exhibit 2**.

The bad bunker fuel provided by NuStar to the Vessel was off-spec and not usable. Glander's attempts to coordinate with NuStar for replacement bunkers in order to mitigate damages and minimize losses associated with the resultant delays and related costs, were frustrated by NuStar's repeated refusals to cooperate. As a result, replacement fuel had to be purchased to meet the Vessel's fuel consumption needs and the bad bunker fuel had to be offloaded in Rotterdam, Netherlands, at a significant loss to Glander. The source of all damages, costs, and expenses incurred by Glander is the delivery of the unsuitable, contaminated, and off-specification bunker fuel supplied by NuStar.

## IV.
### ARGUMENT AND AUTHORITIES

**1.      Standard of Review**

Summary judgment is only proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also *Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. See *Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995).

A motion for summary judgment is not the proper vehicle for weighing evidence and making credibility determinations. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment state the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *Agosto v. INS*, 436 U.S. 748, 756 (1978) ("[A] district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented."). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir 1992) (citing *Liberty Lobby, Inc.*, 477 U.S. at 255). "[T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather,

*all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.*" *Id.* at 248-49 (emphasis added).

"Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Freeman v. U.S.*, 2005 WL 3132185, *2 (S.D. Tex. Nov. 22, 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255 (1986)).

**2.  NuStar fundamentally breached the contract and therefore the limitation provisions in the Sales Agreement are unenforceable.**

Although the Sales Contract incorporates the law of the State of Texas, the contract for the supply of bunkers to a vessel is a maritime contract which gives rise to this Court's admiralty and maritime jurisdiction. *See, e.g., Sagaan Devs. & Trading Ltd. v. Quail Cruises Ship Mgmt.*, 213 U.S. Dist. LEXIS 72575, *14 (S.D. Fla. 2013) (holding that a breach of a bunker supply contract invokes the court's admiralty jurisdiction); *see also Southworth Mach. Co., Inc. v. F/V Corey Pride*, 994 F.2d 37, 40 & n.3 (1st Cir. 1993) (State law may supplement general federal maritime law but may not directly contradict it and may include the Uniform Commercial Code ("U.C.C."). Indeed, "the U.C.C. is considered a source for federal admiralty law.") (citations omitted).

Section 2.719(b) of the Texas Business & Commerce Code "provides that, if a buyer can establish that a limited or exclusive remedy provided in the contract 'fails of its essential purpose' then the buyer may disregard that term of the contract and pursue remedies to which the buyer otherwise might not have recourse." *Berge Helene Ltd. v. GE*

*Oil & Gas, Inc.*, 830 F. Supp. 2d 235, 271 (S.D. Tex. 2011) (abrogated on other grounds) (citations omitted). "The 'failure of essential purpose' exception to the general right of sellers to limit liability under the U.C.C. 'applies most obviously to situations where the limitation of remedy involves repair or replacement that cannot return the goods to their warranted condition.... In such cases, a limited or exclusive remedy fails its essential purpose if the seller is unwilling or unable to repair the defective goods within a reasonable period of time. Limited remedies have also been found to fail of their essential purpose where the limited remedy would cause plaintiffs to lose the 'substantial value of their bargain,' or when defects in the goods are latent and not discoverable on reasonable inspection." *Id*. (citations omitted). Here, Glander clearly lost the substantial value of its bargain.

NuStar promised to deliver fuel oil under its Sales Agreement with Glander in accordance with specifications set by ISO 8217: 2010(E) and which conforms to regulations 14 and 18 of Annex VI of MARPOL 73/78. *See* **Exhibit 1** ("All fuel oil supplied in accordance with specifications set by ISO 8217:2010(E) and conforms to regulations 14 and 18 of Annex VI of MARPOL 73/78 unless otherwise noted.").

As set forth in the results of the Analytical Report following analysis of samples drawn from the bunkers, the bunkers which were supplied to the M/V CLIPPER ENYO failed to comply with the required specifications, were contaminated, off-specification, and materially unfit for their intended purpose. *See* **Exhibit 3**. For instance, the combined aluminum plus silicon (AL+SI) levels were measured to be 154 mg/kg, more than two-and-a-half times the maximum limit (60 mg/kg) permitted under the ISO 8217 standard

that was promised. *See id.*; **Exhibit 4** (ISO 8217:2010 Fuel Standard). NuStar acknowledged that the results of this testing exceeded the applicable standard.[1] *See* **Exhibit 5**. It is without dispute the bunkers were fundamentally contaminated, materially unfit for their intended purpose, and did not comply with the required specifications.

There is a genuine issue of material fact as to whether NuStar's material misrepresentation(s) that "[a]ll fuel oil supplied is in accordance with specifications set by ISO 8217: 2010(E) and conforms to regulations 14 and 18 of Annex VI of MARPOL 73/78 unless otherwise noted" constitutes a fundamental breach of the contract in light of the undisputed and admitted test results showing that the fuel did not so comply with the stated specifications. *See* **Exhibit 1**. Such facts cannot be resolved without this Court weighing the competing evidence (which is prohibited at the summary judgment stage), and therefore it is respectfully submitted that the motion for partial summary judgment seeking to exclude Glander's warranty claims and/or to limit Glander's recovery based on purported applicability of contractual limitation clauses is premature. Accordingly, the motion for partial summary judgment must be denied in its entirety.

3. **NuStar's instruments of the sale conflict and therefore summary judgment must be denied.**

NuStar's motion for partial summary judgment is based on the argument that the exclusion of warranties clause was communicated to Glander in a timely and conspicuous way. *See* Doc. 9. Therefore, NuStar's argument goes, Glander's claims for breach of

---

[1] The acknowledgment by Mr. Andy Downs of NuStar references the 2005 version of the ISO 8217 standard, which lists the maximum limit of aluminum plus silicon at 80 mg/kg. *See* **Exhibit 6**.

warranties of merchantability and fitness for a particular purpose must be excluded under applicable Fifth Circuit precedent and Texas State law consistent with the U.C.C. and the Texas Business & Commercial Code. In this case, however, the representations and limitation clauses contained in the Sales Agreement and the Marine Fuel Delivery Note conflict. *See* **Exhibits 1** and **2**. Therefore, a material question of fact exists such that the Court must deny NuStar's motion for partial summary judgment.

Pursuant to TEX. BUS. & COM. CODE § 2.313(a), express warranties by the seller that the goods shall conform to the affirmation or promise are created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." *Id*. The Sales Agreement expressly promised, without exception, that:

> All fuel oil supplied is in accordance with specifications set by ISO 8217: 2010(E) and conforms to regulations 14 and 18 of Annex VI of MARPOL 73/78 unless otherwise noted.

*See* **Exhibit 1**. Regulation 18 of Annex VI of MARPOL 73/78 explicitly bans fuel oil that is contaminated, jeopardizes the safety of ships, or adversely affects the performance of the machinery. *See* **Exhibit 7**, MARPOL Annex VI Regulation 18(1)(a)(i) and 18(1)(a)(iii)(1). Moreover, the Marine Fuel Delivery Note expressly promised, without exception, that:

> Seller certifies the fuel oil supplied conforms with MARPOL Annex VI regulation 18.3 …

*See* **Exhibit 1**. Regulation 18.3 of Annex VI of MARPOL 73/78 requires, among other things, "[a] declaration signed and certified by the fuel oil supplier's representative that the fuel oil supplied is in conformity with regulation 14(1) … and regulation 18(1) of

MARPOL Annex VI." *See* **Exhibits 7** and **8**. As reflected in the Analytical Report and acknowledged by NuStar's agent, Andy Downs, there is no question that the bunkers did not conform to the regulations as specified in the Sales Agreement.

In *W.R. Weaver Co. v. Burroughs Corp.*[2], the Court ruled that, although the Equipment Sales Contract disclaiming implied and express warranties complied with the U.C.C., that was not the end of the inquiry. 580 S.W. 2d 76, 81 (Tex. App—El Paso 1979, writ ref'd n.r.e.). Specifically, the statement of installation conditions included a statement that "systems analysis … will completely define Weaver's accounting needs and will design a working system to meet Weaver's specific requirements." *Id.* The Court denied summary judgment, ruling:

> At this stage, at least, the inconsistent language of the instruments, creating an express warranty while at the same time disclaiming the warranty, creates a question of fact as to the intention of the parties and prohibits the summary judgment insofar as the judgment might have been based upon any disclaimer of warranties.

*Id*.

The instruments at issue related to the supply of bunkers to the M/V CLIPPER ENYO are in conflict between the purported disclaimer of warranties in the Terms and Conditions of Sale Marine Fuels of the Sales Agreement and the express warranty created by the specific promises and affirmations in the Sales Agreement and Marine Fuel Delivery Note issued by NuStar. *See* **Exhibits 1** and **2**. Accordingly, there is a genuine issue of disputed material fact which precludes the grant of summary judgment, as NuStar has

---

[2] Cited by NuStar in support of its motion. Doc. 9 at 14.

expressly warranted that the bunkers supplied conformed to applicable laws and regulations (which they did not). *See, e.g.*, *H. G. Brelsford & Assoc. v. Bankston Rentals, Inc.*, 573 S.W.2d 604, 606 (Tex. App.—Eastland 1978, no writ) (quoting *Board of Ins. Com'rs v. Great Southern Life Ins. Co.*, 150 Tex. 258, 239 S.W.2d 803 (1951) ("It is a generally accepted rule of contracts that where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other.")).

4. **Any ambiguity in the Sales Agreement, Terms & Conditions and/or the Marine Fuel Delivery Note goes Against NuStar as the drafter.**

NuStar was the drafter of the Sales Agreement, the incorporating terms and conditions, and the Marine Fuel Delivery Note. Accordingly, the doctrine of *contra proferentem* governs. To be sure, "[t]he traditional rule of construction, applied in admiralty cases, is to construe contract language most strongly against its drafter." *Navieros Oceanikos, S.A. v. S.T. Mobil Trader*, 554 F.2d 43, 47 (2d Cir. 1977) (internal quotation marks and ellipsis omitted); *see, e.g.*, *Allen v. Thomas*, 161 F.3d 667, 671 (11th Cir. 1998) ("We are aware, of course, of the doctrine of *contra proferentum*, a canon of construction in contract law that counsels in favor of construing ambiguities in contract language against the drafter"). In *Nathaniel Shipping, Inc. v. General Elec. Co.*, the Fifth Circuit Court of Appeals ruled that:

> In general, "clauses that purport to limit a party's legal responsibility are strictly construed and to be given effect must clearly express the intent of all parties whose liability is altered by the agreement." Where, as here, an express warranty and a disclaimer of liability potentially conflict, we must harmonize the two, construing ambiguities *contra proferentem* and in favor of warranty coverage.

920 F.2d 1256, 1266 (5th Cir. 1991) (citing *Employers Ins. of Wausau v. Trotter Towing Corp.*, 834 F.2d 1206, 1210 (5th Cir. 1988) (construing insurance contract in favor of coverage).

The same result should follow here. In the event that a term or its application is ambiguous and/or that one or more reasonable interpretations can be applied to a contract term or an incorporated instrument, the language will be construed against the drafter and in favor of the non-drafting party. It is NuStar's instruments surrounding the supply of off-specification bunker fuel to the M/V CLIPPER ENYO which are ambiguous and in conflict here. It is respectfully submitted that a genuine issue of material disputed fact exists as to whether warranties are excluded or not. As such, the motion for partial summary judgment must be denied as a matter of law.

## CONCLUSION

**WHEREFORE**, for the reasons set forth above and what may be added at oral argument, Glander respectfully requests that the Court deny NuStar's Motion for Partial Summary Judgment in its entirety and for such other and further relief to which Glander may be entitled.

[Signature Block on Following Page]

65601:47771307

11

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P

By:   /s/ *Dimitri P. Georgantas*
     Dimitri P. Georgantas
     State Bar No. 07805100
     Fed. I.D. No. 2805
     Blake E. Bachtel
     State Bar No. 24116055
     Fed. I.D. No. 3479533
     1415 Louisiana Street, Suite 4200
     Houston, Texas 77002
     Telephone: 713.224.8380
     Facsimile: 713.225.9545
     dimitri.georgantas@roystonlaw.com
     blake.bachtel@roystonlaw.com

**ATTORNEYS FOR PLAINTIFF GLANDER INTERNATIONAL BUNKERING, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of June 2024, I served a true and correct copy of the foregoing pursuant to Rule 5 of the Federal Rules of Civil Procedure and/or via the CM/ECF Filing System and/or by depositing the same in the United States Mail, postage prepaid and properly addressed to all known counsel of record:

Walter J. Gallant
LEWIS, BRISBOIS, BISGAARD
& SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone:   713.659.6767
Facsimile:    713.759.6830
walter.gallant@lewisbrisbois.com

      /s/ *Dimitri P. Georgantas*
     Dimitri P. Georgantas