# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **GLANDER INTERNATIONAL BUNKERING, INC.** | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | **C.A. NO. 3:23-cv-00071** |
| **V.** | § | **IN ADMIRALTY, Rule 9(h)** |
| | § | |
| **NUSTAR ENERGY SERVICES, INC.** | § | |
| *Defendant.* | § | |

## PLAINTIFF GLANDER INTERNATIONAL BUNKERING, INC.'S SUPPLEMENT TO ITS RESPONSE IN OPPOSITION TO NUSTAR ENERGY SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE COURT:

**COMES NOW**, Plaintiff Glander International Bunkering, Inc. ("Glander"), by and through its undersigned counsel, and submits this Supplement[1] to its Response in Opposition (Doc. 12) to NuStar Energy Services, Inc.'s ("NuStar") Motion for Partial Summary Judgment (Doc. 9) and would respectfully show as follows:

## I.
### INTRODUCTION

In order to fully respond to NuStar's Motion for Partial Summary Judgment, Glander sought leave to depose Mr. Erik Neunhoffer who provided an Unsworn Declaration detailing the underlying transaction and the provision of NuStar's terms and conditions to Glander. *See* Doc. 9-1. Based on the declaration, Glander believed he would

---

[1] Glander incorporates by reference the arguments made in its original Response in Opposition to NuStar's Motion for Partial Summary Judgment.

be the individual best suited to speak to NuStar's terms and conditions in the contest of the underlying transaction. His deposition was conducted on July 2, 2024.

In short, NuStar's Motion for Partial Summary Judgment must be denied for several reasons. First, Glander is entitled to recover reasonable replacement costs under NuStar's own terms and conditions. Glander did incur replacement costs, and whether they were *reasonable* is disputed, creating a fact issue and making summary judgment inappropriate.

Second, Mr. Neunhoffer testified the bunker fuel was off-specification and could not identify any wrongful rejection of the bunker fuel by Glander or violation of the agreement that would otherwise void NuStar's obligation to pay reasonable replacement costs. Finally, for sake of argument, even if Glander could not recover reasonable replacement costs, NuStar's limited remedies still fail because NuStar was unwilling and unable to replace the contaminated bunker fuel in a reasonable time or a reasonable place, eventually requiring the M/V CLIPPER ENYO ("Vessel") to cross the Atlantic *twice* to offload the contaminated bunker fuel.

## II.
### ARGUMENT

**A.    NuStar's Motion for Partial Summary Judgment ignores its own terms and conditions which state that Glander can recover "reasonable replacement costs."**

NuStar claims that "[i]f Glander can establish a breach of contract, its sole remedy, and the most it could recover under the NuStar-Glander contract, is reimbursement of the purchase price, minus the value received at a salvage sale." Doc. 9 at 8. In support, NuStar

continuously cites its terms and conditions throughout its motion but omits one crucial sentence.

The full section of the terms and conditions at issue is reproduced below, with NuStar's omission underlined:

> **[GLANDER'S] SOLE AND EXCLUSIVE REMEDY SHALL BE LIMITED TO REPLACEMENT OF THE MARINE FUEL BY [NUSTAR] OR REIMBURSEMENT OF PURCHASE PRICE BY [NUSTAR], LESS THE PROCEEDS OF ANY SALE OF THE MARINE FUEL WHICH [GLANDER] MAY HAVE EFFECTED. *<u>REASONABLE REPLACEMENT COSTS SHALL BE FOR [NUSTAR'S] ACCOUNT UNLESS [NUSTAR] PROVIDES DUE NOTICE TO [GLANDER] THAT [NUSTAR] DEEMS [GLANDER'S] REJECTION OF MARINE FUEL TO BE WRONGFUL OR IN VIOLATION OF THIS AGREEMENT.</u>***

*See* Doc. 9-1 (NuStar's Sales Agreement) at 16 ¶ 9 (emphasis and alterations added but bold and capitals in original). Glander deposed Mr. Neunhoffer to explore this provision in the context of this transaction and to evaluate NuStar's position on the reasonable replacement costs incurred by Glander and the Vessel as a result of the off-specification and contaminated bunker fuel.

**B.** **The bunker fuel was unquestionably off-specification and contaminated, and Glander did not wrongfully reject the bunker fuel or otherwise violate the agreement.**

Mr. Neunhoffer's deposition proved two things. First, the bunker fuel supplied was unquestionably and undeniably off-specification and did not conform to the standards in the terms of NuStar's contract:

> Q:   So as an initial sort of understanding between us, do you agree that the bunkers that were delivered to the vessel, Clipper Enyo, were, in fact, off-spec or did not otherwise meet the contractual specification?

A:      Yes.

*See* **Exhibit 1** (Deposition of Mr. Erik Neunhoffer) at 14:1-6.

Second—as required to disclaim reasonable replacement costs under NuStar's terms and conditions—Mr. Neunhoffer could not identify any wrongful rejection of the contaminated bunker fuel by Glander or violation of the agreement:

Q:      [] Continuing with that sentence, do you have any information that Glander's rejection of the marine fuel or the bunkers was – was wrongful in the circumstances?

A:      No, I don't know.

Q:      Well, we – we know that the bunkers were off-spec. They were bad bunkers, correct?

A:      Yes.

Q:      And the vessel did not use them, so they were basically rejected, correct?

A:      Yes.

Q:      Do you consider that rejection to be wrongful that the – that Glander and/or the vessel did not want to use off-spec bunkers?

A:      I don't have an opinion on that.

…

Q:      Do you have any information whether the buyer in this case, Glander, was in violation of this agreement?

A:      I don't know.

Q:      So you don't know – you don't have any information? If you – if you had some, you would tell me, right?

A:      I would think so.

*Id*. at 28:15-29:8; 30:8-15 (objections omitted and cleaned up).

Moreover, NuStar never informed Glander that its rejection of the bunker fuel was wrongful or in violation of NuStar's terms and conditions. *See generally* **Exhibit 2** (E-mail Exchanges and Exhibit 5 to Deposition of Mr. Neunhoffer). As a result, and based on NuStar's own terms and conditions, Glander's remedies are expanded to include "reasonable replacement costs." Accordingly, the determination of whether Glander's replacement costs were reasonable inherently presents a fact issue for the Court and solid grounds to deny NuStar's Motion for Partial Summary Judgment.

**C.      NuStar's limited remedies failed in their essential purpose because NuStar could not replace the off-specification bunker fuel in a reasonable period of time or in a reasonable place.**

Section 2.719(b) of the Texas Business & Commerce Code "provides that, if a buyer can establish that a limited or exclusive remedy provided in the contract 'fails of its essential purpose' then the buyer may disregard that term of the contract and pursue remedies to which the buyer otherwise might not have recourse." *Berge Helene Ltd. v. GE Oil & Gas, Inc*., 830 F. Supp. 2d 235, 271 (S.D. Tex. 2011) (abrogated on other grounds) (citations omitted). "The 'failure of essential purpose' exception to the general right of sellers to limit liability under the U.C.C. 'applies most obviously to situations where the limitation of remedy involves repair or replacement that cannot return the goods to their warranted condition.... In such cases, a limited or exclusive remedy fails its essential purpose if the seller is *unwilling or unable to repair the defective goods within a reasonable period of time*. Limited remedies have also been found to fail of their essential purpose where the limited remedy would cause plaintiffs to lose the 'substantial value of

their bargain,' or when defects in the goods are latent and not discoverable on reasonable inspection." *Id*. (citations omitted) (emphases added).

Here, NuStar was unwilling to replace the off-specification bunker fuel within a reasonable period of time or in a reasonable place. Rather, NuStar's position throughout the chain of events was patently unreasonable.[2]

NuStar delivered the bunker fuel to the Vessel on January 27-28, 2022 in Houston, Texas. **Exhibit 3** (Bunker Delivery Receipts). The Vessel departed Houston and began sailing across the Atlantic to her destination.

About a week later, Glander notified NuStar that the bunker fuel was contaminated. **Exhibit 2** at 44.[3] Because the bunkers were undisputably off-specification and unusable, the Vessel had to make an emergency stop in the Azores to purchase bunkers to ensure she had sufficient fuel to cross the Atlantic and complete her voyage. *Id*.at 37-38. Despite multiple requests for assistance from Glander, NuStar refused to assist. *Id*. at 35-36 ("Unfortunately, [NuStar is] not able to assist with arranging [medium gas oil] or debunkering at this time.").

Rather, as a "commercial gesture", NuStar's sole offer of assistance was the removal and replacement of the bunker fuel in Houston, Texas.[4] *Id*. In short, NuStar stubbornly and

---

[2]   Glander intends to move for leave to supplement this section with a declaration from a Glander bunker trader involved in the underlying transaction.
[3]   For ease of reference, the relevant provisions of the various email exchanges have been highlighted.
[4]   NuStar's website contains an "operations map" which states "NUSTAR'S ASSETS ARE STRATEGICALLY LOCATED THROUGHOUT THE UNITED STATES AND MEXICO." *See* https://www.nustarenergy.com/ (last accessed July 13, 2024).

inexplicably refused to assist Glander with the replacement of the bad bunkers that NuStar itself provided.

While in Europe, Glander continuously updated NuStar on its mitigation efforts, identification of debunkering options, and the associated costs. *Id*. at 14-16. Again, NuStar would not commit to assisting Glander in its debunkering efforts while in Europe. *Id*. at 13. Instead, NuStar's sole remedy to Glander was debunkering in Houston while continuously reminding Glander that it was everybody's responsibility to mitigate costs. *Id*. at 24, 31, and 35. Rather, Glander was the one making all reasonable commercial efforts—under the circumstances solely caused by NuStar—to mitigate costs. NuStar made no such effort.

After exhausting all possible avenues for debunkering in Europe, and without any assistance from NuStar, the Vessel reluctantly agreed to return to Houston. *Id*. at 12. The Vessel was unable to locate a cargo for this return voyage, resulting in additional costs. *Id*. at 14. As will be explained in the forthcoming declaration of a Glander representative, the situation further deteriorates when the Vessel arrives back in Houston because NuStar never informed Glander that the debunkering had to occur at *exactly the same location* where the original bunkering occurred to satisfy certain regulations. Unfortunately, that berth was unavailable, and the Vessel had to occur additional costs and—once again—sail across the Atlantic to eventually debunker in Rotterdam.

NuStar's attempt to keep narrowing its already limited remedies to replacement at the point of loading is untenable. Vessels are peripatetic in nature. Requiring a vessel to return to a specific point for replacement is commercially unreasonable and ignores the reality of oceangoing shipping. More importantly, nowhere in NuStar's terms and

conditions is the replacement of bunkers limited to the port—or berth—where the bunkers were supplied.

In sum, NuStar was unable and unwilling to provide its own limited remedy in a reasonable time or in a reasonable place. NuStar's repeated failures caused Glander to lose the value of its bargain. As a result, NuStar should not be entitled to limit its remedies as it seeks.

## III.
### CONCLUSION

**WHEREFORE**, for the reasons set forth above and what may be added at oral argument, Glander respectfully requests that the Court deny NuStar's Motion for Partial Summary Judgment with respect to Glander's breach of contract and breach of warranties claims,[5] and for such other and further relief to which Glander may be entitled.

---

[5] Glander formally withdraws its claim for negligence.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P

By: ___/s/ *Dimitri P. Georgantas*_____
    Dimitri P. Georgantas
    State Bar No. 07805100
    Fed. I.D. No. 2805
    Blake E. Bachtel
    State Bar No. 24116055
    Fed. I.D. No. 3479533
    1415 Louisiana Street, Suite 4200
    Houston, Texas 77002
    Telephone: 713.224.8380
    Facsimile: 713.225.9545
    dimitri.georgantas@roystonlaw.com
    blake.bachtel@roystonlaw.com

**ATTORNEYS FOR PLAINTIFF**
**GLANDER INTERNATIONAL BUNKERING,**
**INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of July 2024, I served a true and correct copy of the foregoing pursuant to Rule 5 of the Federal Rules of Civil Procedure and/or via the CM/ECF Filing System and/or by depositing the same in the United States Mail, postage prepaid and properly addressed to all known counsel of record:

Walter J. Gallant
LEWIS, BRISBOIS, BISGAARD
& SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone:    713.659.6767
Facsimile:    713.759.6830
walter.gallant@lewisbrisbois.com

*/s/ Dimitri P. Georgantas*
Dimitri P. Georgantas