```
           UNITED STATES DISTRICT COURT         EXHIBIT
           SOUTHERN DISTRICT OF TEXAS              1
                GALVESTON DIVISION


GLANDER INTERNATIONAL           :
BUNKERING, INC.                 :
     Plaintiff,                 :
                                :
                                :
v                               : C.A.NO. 3:23-cv-0001
                                : IN ADMIRABILITY,
                                : Rule 9(h)
NUSTAR ENERGY SERVICES, INC.    :
     Defendant.                 :
```

ORAL AND VIDEO DEPOSITION OF
ERIK NEUNHOFFER
JULY 2, 2024
(Reported Remotely)

        Oral and Video deposition of Erik Neunhoffer, produced as a witness at the instance of Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on July 2, 2024, from 11:04 a.m. to 12:47 p.m., before Jennifer Ivanic, Notary Public, in and for the State of Texas, reported by machine shorthand method, pursuant to the Federal Rules of Civil Procedure, and the provisions stated on the record or attached hereto.



```
 1                    A P P E A R A N C E S
 2

 3

 4   FOR THE PLAINTIFF:
     WALTER GALLANT, ESQ.
 5   Lewis Brisbois Bisgaard & Smith, LLP
     24 Greenway Plaza, Suite 1400
 6   Houston, Texas 77046
     walter.gallant@lewisbrisbois.com
 7

 8   FOR DEFENDANT:
     DIMITRI GEORGANTAS, ESQ.
 9   1415 Louisiana, Suite 4200
     Houston, Texas 77002
10   dimitri.georgantas@roystonlaw.com

11
     BLAKE BACHTEL, ESQ
12

13

14
     ALSO PRESENT:
15
           Jennifer Ivanic, Court Reporter and Notary Public
16
           Daniel Long, Videographer
17

18

19

20

21

22

23

24

25
```



```
 1                         I N D E X
 2                                                           PAGE
 3    Appearances. . . . . . . . . . . . . . . . . . . . . . .2
 4
      Erik Neunhoffer
 5        Examination by Mr. Georgantas. . . . . . . . . . . .5
 6        Cross-Examination by Mr. Gallant. . . . . . . . . .51
 7        Examination by Mr. Georgantas. . . . . . . . . . .57
 8
      Signature and Changes. . . . . . . . . . . . . . . . . 64
 9
      Reporter's Certificate. . . . . . . . . . . . . . . . .66
10
11
12                       E X H I B I T S
13
      NUMBER                   DESCRIPTION             PAGE
14
15     Plaintiff's Exhibit 1    Nomination              15
16     Plaintiff's Exhibit 2    Order confirmation      17
17     Plaintiff's Exhibit 3    BDR                     33
18     Plaintiff's Exhibit 4    NuStar Invoice          35
19     Plaintiff's Exhibit 5    Email exchanges         36
20     Defendant's Exhibit 1    Unsworn declaration     52
21
22
23
24
25
```



1    Q.   So as an initial sort of understanding
2 between us, do you agree that the bunkers that were
3 delivered to the vessel, Clipper Enyo, were, in fact,
4 off-spec or did not otherwise meet the contractual
5 specification?
6    A.   Yes.
7    Q.   Thank you for that.  That will save us some
8 questions.
9         Now sometimes I may refer to the vessel.
10 When I say "vessel," I'm referring to the Clipper Enyo,
11 which was the vessel that received the bunkers.  You
12 understand that, correct?
13   A.   Yes.  Enyo, yes.
14   Q.   Enyo.  Let me start going.  I have four or
15 five exhibits today that I want to go through with you.
16 And we're going to try to put them up on the -- on the
17 screen for you, but I can represent to you, you're
18 familiar with all these documents.  They consist of the
19 nomination, the sales agreement, maybe the delivery
20 receipt, and at the end there is going to be a string
21 of emails that were between my client and NuStar when
22 the problem became apparent.
23        So just going through chronologically --
24 let -- before I do that, let me ask another question.
25 This was not the first transaction that NuStar did with



```
 1                    P R O C E E D I N G S
 2
 3              VIDEOGRAPHER:  We're now on the
    record, and this begins Media Number 1 in the video
 4
    deposition of Erik Neunhoffer in the matter of Glander
 5
    International Bunkering, Inc. versus NuStar Energy
 6
    Services, Inc. in the United Stated District Court,
 7
    Southern District of Texas, Galveston Division.
 8
              Today's date is July 2nd, 2024, and time on
 9
    the monitor is 11:04 a.m.  This deposition is being
10
    taken remotely, via Zoom conference.  The witness is
11
    appearing from San Antonio, Texas, at the request of
12
    Royston, Rayzor, Vickery & Williams, LLP.  The
13
    videographer today is Daniel Long with Magna Legal
14
    Services.  And the court reporter today is Jennifer
15
    Ivanic of Magna Legal Services.
16
              Will counsel and all parties present, state
17
    their appearance and whom they represent.
18
                 MR. GEORGANTAS:  Dimitri Georgantas
19
    and Blake Bachtel for the plaintiff.
20
                 MR. GALLANT:  Walter Gallant for
21
    NuStar Energy.
22
                 VIDEOGRAPHER:  Will the court
23
    reporter, please swear in the witness.
24
                 COURT REPORTER:  Yes.
25
              Mr. Neunhoffer, will you please raise your
```



```
 1       Q.   (BY MR. GEORGANTAS)  What's your
 2   understanding of the disagreement?
 3       A.   That aluminum and silicone were high or
 4   outside of ISO spec, and that there is a -- that
 5   Glander is seeking remedy to that.  They claimed us for
 6   it.
 7       Q.   For all the costs associated with that claim,
 8   correct?
 9       A.   I don't know exactly what all the costs
10   they're -- they're -- they're claiming for.  I don't
11   know what they're all -- what they are pursuing
12   completely.
13       Q.   Well, who would know that from NuStar?
14       A.   Likely, Andy.
15       Q.   Okay.  Continuing with that sentence, do you
16   have any information that Glander's rejection of the
17   marine fuel or the bunkers was -- was wrongful in the
18   circumstances?
19            MR. GALLANT:  Objection.  Lack of
20   foundation.
21            You can answer, Erik.
22       A.   No, I don't know.
23       Q.   (BY MR. GEORGANTAS)  Well, we -- we know that
24   the bunkers were off-spec.  They were bad bunkers,
25   correct?
```



```
 1        A.    Yes.
 2        Q.    And the vessel did not use them, so they were
 3   basically rejected, correct?
 4        A.    Yes.
 5        Q.    Do you consider that rejection to be wrongful
 6   that the -- that Glander and/or the vessel did not want
 7   to use off-spec bunkers?
 8        A.    I don't have an opinion on that.
 9        Q.    So you think they should have gone ahead and
10   used them, even though they were off-spec?
11        A.    I'm not -- I'm not a technical -- I'm not an
12   engineer.  I'm not a chief engineer.  I just -- I
13   just -- I couldn't speak to that.
14        Q.    Well, it's not a chief engineer question.
15   We're talking about off-spec bunkers.  We've agreed on
16   that, correct?
17        A.    Yes.
18        Q.    And the buyer in this case, Glander, and
19   their customer rejected them because they were
20   off-spec, correct?
21        A.    Correct.
22        Q.    So do you think that rejection was wrongful
23   per the language of your terms and conditions that they
24   rejected off-spec bunkers?
25                    MR. GALLANT:  Objection.  Lack of
```



```
 1   foundation.
 2       A.   I really just don't feel comfortable
 3   answering that because I just -- I don't know.  There
 4   is -- there could be other avenues I can't speak to
 5   technically, operationally.  I just -- I don't know.
 6   There's a number of different things that could have
 7   happened.
 8       Q.   (BY MR. GEORGANTAS)  Do you have any
 9   information whether the buyer in this case, Glander,
10   was in violation of this agreement?
11       A.   I don't know.
12       Q.   So you don't know -- you don't have any
13   information?  If you -- if you had some, you would tell
14   me, right?
15       A.   I would think so.
16       Q.   Right.  So the answer is -- is no?
17       A.   To my knowledge, right now I -- repeat the
18   question again, please.
19       Q.   The question was -- and, of course, to your
20   knowledge whether the -- the buyer in this case,
21   Glander, did anything to violate this agreement?
22                MR. GALLANT:  Objection.  Form.  Lack
23   of foundation.
24       A.   I don't know if they did.
25       Q.   (BY MR. GEORGANTAS)  Well, if you had any
```

